UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 18-3037 _____   Caption [use short title]

Motion for: in forma pauperis for "COA"

_I am asking for this relief because_   Love v. Martuscello
                                        6:17-cv-06244-FPG
_I am currently incarcerated/ little money._

Set forth below precise, complete statement of relief sought:

_I ask this Court for relief because_

_I am currently incarcerated and I_

_have a small amount of money in my_

_prison account, I only make $12 every_

_two weeks and my family only sends_

_what they can afford at their convince._

MOVING PARTY: John L. Love           OPPOSING PARTY: Barbara D. Underwood,-

☐ Plaintiff        ☐ Defendant         New York State Office
                                        of the Attorney General
☒ Appellant/Petitioner  ☐ Appellee/Respondent   28 Liberty Street
                                        New York, NY 10005
MOVING ATTORNEY: _____      OPPOSING ATTORNEY: Barbara D. Underwood

[name of attorney, with firm, address, phone number and e-mail]

Orleans Correctional Facility _____

35-31 Gaines Basin Road _____

Albion, NY 14411 _____

Court- Judge/ Agency appealed from: Hon. Frank P. Geraci, Jr./U.S. DISTRICT COURT, Western Dist.
                                                                                    of New York
Please check appropriate boxes:                FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND
                                               INJUCTIONS PENDING APPEAL:
Has movant notified opposing counsel (required by Local Rule 27.1):   Has this request for relief been made below?        ☐Yes ☐No
  ☒ Yes ☐ No (explain): _____        Has this relief been previously sought in this court?    ☐Yes ☐No
                                               Requested return date and explanation of emergency: _____

Opposing counsel's position on motion:
  ☐ Unopposed ☐ Opposed ☒ Don't Know
Does opposing counsel intend to file a response:
  ☐ Yes ☐ No ☒ Don't Know

Is oral argument on motion requested?   ☐ Yes ☒ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes ☒ No If yes, enter date: _____

Signature of Moving Attorney:
John L. Love   Date: 11/5/18   Service by: ☒ CM/ECF ☐ Other [Attach proof of service]

Federal Rules of Appellate Procedure Form 7. Declaration of Inmate Filing

United States District for the District of <u>Western New York</u>

Love
     )
    Plaintiff, )
     v.    )     Case No. <u>6:17-cv-06244-FPG</u>

Martuscello    )
       )
    Defendant. )

    I am an inmate confined in an institution. Today, November 5, 2018, I am depositing the application for <u>Certificate Of Appealability</u> in this case in the institution's internal mail system. First-class postage is being prepaid either by me or by the institution on my behalf.

    I declare under penalty of perjury that the foregoing is true and correct (see 28 U.S.C. § 1746; 18 U.S.C. § 1621).

    I also declare that I recieved this application per. legal mail on October 22, 2018.

*November 5, 2018*

*John L. Love*

United States Court of Appeals for the Second Circuit

Thurgood Marshall U.S. Courthouse

40 Foley Square

New York, NY 10007

***

To the Honorable Robert A. Katzmann, Chief Judge of the United States Court of Appeals for the Second Circuit:

<u>IDENTITY OF MOVING PARTY AND RELIEF REQUESTED</u>

John L. Love #11-B-1782, (Love v. Martuscello  Docket#: 18-3037) habeas petitioner asks this court to grant a certificate of appealability ("COA") pursuant to Circuit Rule 22-1.

Love was charge with rape in the first degree (Penal Law §130.35 [1]) and rape in the third degree (§130.25 [2]), criminal docket #IND. No. 2010-1053, represented by Public Defender Mr. Doran and was tried and sentenced to 15 years + 5 years post release. Timely notice of appeal was filed to the Supreme Court, Appellate Division: Fourth Dept. (KA11- 01664) and upon decision, appeal was affirmed. Love filed a CPL. 440.10 motion to vacate: (on the advice of my appellate counsel to withdraw until the direct appeal was heard) I raised numerous grounds, especially

(1)

-[Ineffective assistance of trial counsel for not consulting with a medical expert; for the lack of medical evidence...under the Sixth Amend. Strickland v. Washington 466 U.S. 688 (1984) ]. The prosecutions argument was that there was no expert needed by defense because there was nothing to object to. The motion was denied without a hearing. An appeal with the Appellate Division, Fourth Judicial Department was also filed and denied. All state remedies have been exhausted so on April 19, 2017 Love filed a petition for a writ of habeas corpus in the Western District of New York, asking for appointment of counsel under C.J.A.; order a hearing to be held pursuit to 28 U.S.C. 2254 and at the conclusion determine weather petitioner suffered the loss of his Sixth Amendment Right to affective assistance of counsel. All court actions was without any evidentiary hearings.

The petition of John L. Love 11-B-1782 respectfully shows:

1. That petitioner made application to the Honorable Geraci, Chief Judge of the United States Western District of New York on April 19, 2017 for a writ of habeas corpus, a copy of the application is attached.

2. Judge Geraci of the United States District Court denied petitioner's application for writ of habeas corpus by an order dated September 26, 2018, a copy of the order is attached.

3. Petitioner filed a notice of appeal from the order of the District Court on October 15, 2018, a copy of the notice of appeal is attached.

4. The detention complained of by your petitioner in this application for writ of habeas corpus arouse out of process issued by a state court, to wit: Honorable

(2)

Judge Geraci, County Court Hall of Justice, Rochester, New York.

5. Judge Geraci of the United States District Court has refused to issue a Certificate of Appealability upon petitioner's motion for the reasons stated in his order dated September 26, 2018 denying petitioner's motion for a Certificate of Appealability, a copy of the order is attached.

6. Under Rule 22(b) of the Federal Rules of Appellate Procedure, it is necessary for a Certificate of Appealability to be issued before your petitioner may appeal to this court from the denial of his application for writ of habeas corpus.

7. In addition to the reasons stated in petitioner's application for writ of habeas corpus, a Certificate of Appealability should be issued for the following reasons:

## REASONS WHY "COA" SHOULD BE GRANTED

1.) Since petitioner Love presented an ineffective assistance of counsel claim ("IAC"), and since the state courts never held any evidentiary hearings and never resolved disputed factual issues bearing on those claims, did the District Court err in dismissing Love's habeas petition without first holding an evidentiary hearing?

2.) Did the District Court apply the correct rule standards to the ineffective assistance of counsel; was it the New York law?

3.) Did the District Court err, because petitioner's ineffectiveness claim was

(3)

considered and rejected by the County Court in adjudicating petitioner's motion under New York Criminal Procedure Law § 440.10, this case is subject to the deferential standard of review of state court adjudications under the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d). See Lindstadt v. Keane, 239 F.3d 191, 197-98 (2d Cir.2001). Therefore, the petition should have been granted only if the County Court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d).

Where a petitioner challenges his conviction based on ineffective assistance of counsel, the question is whether the state court unreasonably applied Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Williams, 529 U.S. at 390, 120 S.Ct. 1495.

The Court of Appeals for the Second Circuit has recently gone as far as to imply that all of counsel's significant trial decisions must be justified by a sound strategy--a significant rasing of the bar that would appear to require an unrealistic degree of perfection in counsel as well as the ability to justify largely intuitive decisions based on the arts of trial practice. See Eze, 321 F.3d at 136 (remanding to district court for factual hearing because it was "unable to assess with confidence whether strategic considerations accounted for...counsel's decisions").

In Eze and Lidstadt it was held that the New York courts unreasonably applied Strickland in finding counsel's performance effective. See. Eze, 321 F.3d at 124-38; Lindstadt, 239 F.3d at 197-98, 205. The district court was bound to apply this

ble",

(4)

Court's precedents governing when applications of Strickland are "unreasonable", and in doing so did not violate, but rather, effectuated the AEDPA standard, 261 F.3d at 215-16, it elaborated on the principles explicated in Lindstadt, see Pavel, 261 F.3d at 221-25 & n.15

The district courts decision stated ["Moreover, the record shows that petitioner's attorney provided professional and competent assistance of counsel, including objecting to testimony and the introduced of evidence, moving for a mistrial, presenting a defense and testimony at trial, and urging jurors to disregard evidence. For this reason, petitioner's ineffective assistance of counsel claim is dismissed.]

Despite these compelling indications that, had he undertaken an adequate investigation of the prosecution's flawed evidence, trial counsel could have "presented a strong affirmative case that the charged crime did not occur and the alleged victim's story was incredible in its entirety", the state courts unreasonably and intractably adhered to its original verdict. Further, without asking for any explanation from the trial counsel, the court simply pronounced counsel's choices presumptively justified by unknown "tactical" considerations. The court also praised counsel's medically uneducated and ineffective cross examination as professional and competent (fit, qualified) enough to have supposedly "neutralized the impact" of the medical testimony.

However, it is axiomatic that, even if defense counsel had performed superbly throughout the bulk of the proceedings, they would still be found ineffective under the Sixth Amendment if deficient in a material way, albeit only for a moment and not deliberately, and that deficiency prejudiced the petitioner.

(5)

Under the prejudice prong of Strickland, petitioner is required to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different, "Strickland, 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In evaluating prejudice, we look to the cumulative effect of all of counsel's unprofessional errors. Lindstadt, 239 F.3d at 204. We must keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by [counsel's] errors." Strickland, 466 U.S. at 696, 104 S.Ct. 2052.

Gersten v. Senkowski, 426 F.3d 588, 607 (2d Cir.2005) (quoting Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052). The Second Circuit has observed that "[i]n sexual abuse cases, because of the centrality of medical testimony, the failure to consult with or call a medical expert is often indicative of ineffective assistance of counsel."

The Second Circuit has repeatedly held that "When a defendant is accused of sexually abusing a child and the evidence is such that the case will turn on accepting one party's word over another's, the need for the defense counsel to, at a minimum, consult with an expert to become educated about vagaries of abuse indicia' is critical." Eze v. Senkowski, 321 F.3d 110, 128 (2d Cir.2003); see also Pavel v. Hollins, 261 F.3d 210, 224 (2d Cir.2001) ("Because of the importance of physical evidence in 'credibility contest' sex abuse cases, in such cases physical evidence should be a focal point of the defense counsel's pre-trial investigation and analysis of the matter."); Lindstadt v. Keane, 239 F.3d 191, 210 (2d Cir. 2001).

(6)

Recently, a number of habeas courts have determined that no reasonable strategy supported trial counsel's considered decisions, in a criminal prosecution for child abuse, not to consult with or present an expert witness for the purpose of challenging the opinions offered by the prosecution's medical experts concerning the medical evidence of sexual abuse and/or psychological experts with regard to psychological matters pertaining to victims of such abuse. See, e.g., Gersten v. Senkowski, 426 F.3d at 607-14; Lindstadt v. Keane, 239 F.3 at 202-04; Burch v. Millas, 663 F.Supp.2d 151, 185 (W.D.N.Y.2009)(Bianchini, M.J.).

4.) Did the district court err when petitioner demonstrated that he would prevail on the merits, but merely that the issues involved in this case are debatable among jurist of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further; this threshold question should be decided without full consideration of the factual or legal bases adduced in support of the claims in the district courts decision and order when it stated that ["there was substantial other evidence, including the victims trial testimony and sexual assault forensic evidence, pointing to his guilt. Accordingly, petitioner due process claim is dismissed"]; in the contradiction to the decision and order of my CPL.440.10 motion to vacate judgement for ineffective assistance of counsel ["The people correctly noted that Nurse Crasti's testimony was that there was a "tear" in the complainant's posterior fourchette of the hymen, as well as redness, and blood in the complainant's cervical opening which led her to conclude that "there was some type of assault or some type of force that created a tear..." she specifically stated that she could not 'diagnose as a sexual assault".]

Nurse Crasti's credibility is in serious doubt, occasioned by her testimony of "seeing a tear in the hymen" with her naked eye [as said, she did not use a colposcope which is an instrument that has a magnifying lens and eyepieces...that allows the examiner to see the small hymenal opening under magnification and it allows documentation in most cases by use of an attached camera. One can take photographs of the area and make a detailed determination and have these as a baseline study so that in the future examinations, the two exams can be compared to each other. Nurse Cristi testified that she saw this "minuscule" tear with her naked eye [TT 362, 25; 363 1-2] which she made no note of on the medical exam on the night of the exam of the victim, but she insists she made a mental note of this critical evidence, which was her job to do such documentation. Her methods and conclusions are deemed "questionable", incredible on their face.

Contemporaneous studies that cast doubt on any link between (i) the scarring of the posterior fourchette disclosed by toliudine dye test and (ii) sexual abuse. See David Muram, Child Sexual Abuse: Relationship Between Sexual Act and Genital Findings, in 13Child Abuse and Neglect 211-16 (1989); R.G. Teixerian, Hymenal Colposcopic Examination in Sexual Offenses, 2 Am. J. Forensic Med. Pathology 209-215 (1980).

Technically no affirmative evidence was presented to the jury by her questioning, because it is black letter law that questions asked by counsel are not evidence. See, e.g., United States v. Cudlitz, 72 F.3d 992, 1002(1st Cir. 1996).

The prosecutors physician offered largely unconvincing testimony; but in another case People v. Carrol 95 N.Y. 2d 384, the nurse indicated that any sudden, forceful entry would cause "significant tearing and bleeding",...such a first-time act of

(8)

forceful penetration would have produced significant tearing and bleeding; No evidence of which exists in petitioner's case.

Nurse Crasti in petitioner's case testimony [TT 352-364] was not consistent with the facts and circumstances surrounding, the alleged rape, it did not prove any penetration. The evidence was not sufficient to establish beyond a reasonable doubt the element of penetration (See, People v. Dunn, 204 A.D. 2d 919, 612 N.Y.S. 2d 266, iv. denied  84 N.Y.2d 907, 621 N.Y.S. 2d 524, 645 N.E. 2d 1224; cf., People v. Fuller, 50 [740 N.E.2d 1089] N.Y. 2d 628, 431 N.Y.S. 2d 357, 409 N.E.2d 834).

With no evidence that the sexual contact was brought about by the use of physical force, we turn to the "evidence establishing the state of mind of the victim caused by petitioner's alleged conduct" to ascertain whether sexual contact was compelled by threat or fear [ McKinney's Penal Law §§ 130.00 (8), 130.65 (1) ]; there is no testimony that victim was fearful of petitioner. Although this testimony was sufficient for the court to establish that sexual contact occurred without the victim's consent, it did not establish that petitioner used force here, despite the tests performed for the sexual assault kit and the bedding recovered from Love's bed, nor was there any bruises, pubic hairs, semen, scrapes or any DNA evidence, no evidence at all to such a testified [violent rape TT 265 4-7, struggle but no bruises TT 262 19-21, no torn clothes TT 264 3-14], corroborating to her account. In sum, the evidence was not sufficient beyond a reasonable doubt of the element of penetration or rape.

To be convicted of either rape in the third or forcible rape, the people had to prove beyond a reasonable doubt, that the petitioner had 'sexual intercourse" (Penal Law §§130.35, 130.25), sexual intercourse requires "penetration" (Penal Law

§130.00 (1)., the indictment alleged that the petitioner engaged in sexual intercourse with the victim.

On the challenge to the legal sufficiency of the proof, we view the evidence most favorable to the prosecution and consider whether a rational juror could have concluded that the elements of the crime were established beyond a reasonable doubt (see People v. Cabey, 85 N.Y.2d 417, 421 626 N.Y.S.2d 20, 649 N.E.2d 1164 [1995]).

The questionable hymen: Miller v. senkowski, 268 F. Supp.2d 296, 311-312 (E.D.N.Y. 2003), discussing counsel's failure to rebut the testimony of the prosecutions child psychologist, but find counsel's performance ineffective based solely on his failure to call or consult with a medical expert with respect to the questionable physical evidence of the hymen.

5.) Did the district court miss the err in the 440.10 court of not giving defendant a evidentiary hearing on his factual allegations of "IAC" by their decision and order of denial? (["The court found that "[I]n sexual abuse cases, beyond of the centrality of medical testimony, the failure to consult with or call a medical expert is often indicative of ineffective assistance of counsel...This is particularly so where the prosecution's case, beyond the purported medical evidence of abuse, rests on the credibility of the alleged victim..." Here, defendant has not submitted to this court any expert affidavit, which would indicate potential medical testimony more favorable to defendant. While the court understands that defendant claims that he did attempt to consult with a medical expert, there is no expert affidavit submitted for this courts review.])

(10)

Petitioner and his mother tried to get expert medical opinion from Dr. Jocelyn Brown at The Child Advocacy Center at Columbia Presbyterian Hospital and Medilex Inc.; They both told that they "only accept cases/correspondence from attorneys, never from litigants themselves, if you have an attorney s/he may contact us".

On the decision in the appeal in Flores v. Estelle, 492 F.2d 711 (5th Cir.1974), for example, the defendant attempted to elicit expert opinion testimony...the expert refused to express an opinion because he had not been retained as an expert witness...the reviewing courts agreed "that the trial court erred in refusing to require (the expert) to testify, thereby depriving Flores of effective compulsory process for obtaining witnesses in his favor."

It is scarcely conceivable that petitioner could be constitutionally denied the opportunity to call experts to give opinion evidence about sexual assaults, broken hymens, posterior fourchettes and other matters that routinely arise in rape criminal litigation. An indigent criminal defendant is entitled to an ex.parte hearing on whether expert assistance is necessary, based on the Fifth, Sixth, and Fourteenth Amendments.

Dr. Brown is an expert medical expert, see Gersten, supra; she could have "cast considerable doubt" on the medical testimony and added weight to the defendant that "no sexual abuse had occurred and...no penetrating sexual activity whatsoever had taken place". That district court also fairly concluded that any defense "backed with the strength of expert medical testimony" would have been "considerably more compelling than a simple denial of sexual abuse", both by rebutting the prosecution's medical evidence and by "cast[ing] considerable doubt on all the daughter's testimony".

(11)

I petitioner, asked for David M. Abbatoy, Esq. to represent me on my LEAVE TO APPEAL CPL §460.15 to the APPELLATE DIVISION FOURTH DEPARTMENT and was denied this request as they stated there was no question of law or fact which ought to be reviewed...permission denied, along with the denial of this request in my application for writ of habeas corpus; [Here, the Court finds that the appointment of counsel is not warranted. Petitioner's legal claims are not unusually complicated. Additionally, Petitioner's submissions to the Court are organized, detailed and cogent. Petitioner appears to investigate the facts concerning his claim. Lastly, there are no special reasons that would favor the appointment of counsel in this case.* (* their footnote)

* Petitioner argues that the state court failed to appoint an attorney to represent him in his state habeas proceedings in violation of Martinez v. Ryan, 566 U.S. 1 (2012). But Martinez announces the right to adequate assistance of counsel in collateral proceedings during which a defendant is able to raise an ineffective assistance of trial counsel claim for the first time. Id. at 11 ("Where, as here, the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim.") In other words, Petitioner would only have a right to an attorney at that proceeding if the state of New York required him to raise his ineffective assistance of trial counsel claim in a collateral proceeding. See id. That is not the law in New York. See, e.g., People v Rivera, 71 N.Y.2d 705 (1988) (resolving an ineffective assistance of counsel claim on direct appeal). ].

Martinez v. Ryan, U.S., 132 S.Ct. 1309 (2012) "Where under state law, claims of

(12)

ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if the initial review collateral proceeding there was no counsel or counsel in that proceeding was ineffective". In New York, all "extra record (outside of the trial record claims) are encouraged to be presented in an Article 440 motion to vacate where the trial court can better deal with the matter and hold hearings rather than Appellate Divisions.

Petitioner argues that the trial court violated his due process rights by erroneously admitting a 911 recording into evidence. Respondent contends that the due process claim is (1.) unexhausted because petitioner did not present it in federal constitutional terms on direct appeal; [on direct appeal I was represented by David M. Abbatoy, who requested leave to appeal]. (2.)now procedurally default because petitioner can no longer raise it in any state forum; and (3.)*otherwise meritless.

* When a state court uses language stating that a prisoner's remaining contentions are either unpreserved for appellate review or without merit, the validity of the claims is preserved and is subject to federal habeas review. 28 U.S.C.A. § 2254 (b). Petitioner has established that he was deprived of a fair trial in the decision and order on ground two. A habeas petitioner may overcome this bar by demonstrating (1) cause for the default and actual prejudice, or (2) that the failure to consider the federal habeas claim will result in a fundamental miscarriage of justice, see Colman v. thompson, 501 U.S. 733 (1991).

This subject was impacted by the fact that the prosecutor of the trial played a 911

(13)

recording [that was let into evidence without a proper foundation] loud enough for the jurors to hear in the anteroom during a discussion with counsel (TT. 199). The Judge admitted as much when he said, ( "[u]nfortunetly, because of the volume, I think some of the jurors may have heard that tape at this point. Deputy Lazarus indicated that they may have heard some noise any ways coming from the courtroom. So, in any event, I think it would be a problem if it wasn't admitted". (TT. 199 [emphasis added]).

Defense counsel requested a mistrial, and the court agreed, "I think that might be a valid motion", but the court denied the motion after deciding to admit the tape into evidence, the theory being that there was no prejudice resulting from the jurors hearing the tape prematurely (TT. 211-212, 223).

The motion for mistrial was denied [TT. 223 1-6]. The court provided the jury with cautionary instruction regarding anything that they heard [TT. 223 21-25; TT. 224 1-7].

We "presume that the jury will follow an instruction to disregard inadmissible evidence...unless there is an overwhelming probability that the jury will be inable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant. The question here is how can we assume that a jury that just heard loud, premature audio evidence that had no legally sufficient foundation, can actually disregard it. Given the tape was admitted into evidence for something other than legal reasons, this court should have reversed the conviction and ordered a new trial.

In the decision and order, it also stated that petitioner and his mother followed

(14)

the victim to the pay phone, this is a mistake. The recording and the victim's testimony also established that the victim initially believed that defendant was in the car when actually it was petitioner's mother, alone. petitioner was at his residence when the police left the pay phone, petitioner's mother and victim; upon arrival at petitioner's house.

It also stated that substantial other evidence, including the victim's testimony and sexual assault forensic evidence, pointing to his guilt. This is false, there was no sexual assault forensic evidence at all pointing to petitioner's guilt.

Petitioner's argument in ground four was that, defense counsel did nothing with a photographic piece of evidence of the victim's state of mind, nor did he seek out opinion of an expert witness in child psychology on this obviously important piece of material information coming directly from the complaining witness in a case he was defending. A photo, which was posted on FACEBOOK showing the victim with the words across the front of the picture bantered "I consider myself innocent until proven guilty". The photo could have impeached the credibility of the victim, demonstrate her hostility, and establish that she actually did falsely accuse petitioner.

Days before the picture surfaced on FACEBOOK, she and my family had spoken words to her framing me and that she wasn't the innocent little girl that she was trying to portray. She posted this picture then took it off the next day, but not before my girlfriend printed it out for me and my lawyer. My girlfriend and my mother took this piece of evidence to MR. Doran's office and he wasn't there numerous time, so they left it to the front desk for him. On Public Defender Night he and I had a discussion about this picture and the fact that he wanted me to tell my family to

(15)

stop coming to his job speaking with his boss about this picture. I also mentioned this picture in my last words at my sentencing. (Sentencing TT. 9, 7-10) "I had some picture of her from off of the internet that I thought would be some good evidence, but I guess that didn't show up. I don't know. That's it.

I pointed out various FED.R.EVIDENCE; 401 (a)(b), 801(c)(d)(2), 804(b)(2), 804 (b)(3)(a), 901 (b)(1) in my habeas corpus application, which was all ignored or disregarded. Also the Second Circuit has noted, "[i]n nearly every case [as here] that concludes that counsel conducted a constitutionally deficient investigation, the courts pointed to readily available evidence neglected by counsel." Greiner, 417 F.3d at 322; see e.g. Rompilla, 125 S.Ct. at 2465-67 (faulting defense counsel for not consulting a "readily available file sitting in the trial courthouse, open for the asking" and emphasizing that "[t]he unreasonableness of attempting no more than they did was heightened by the availability of the file at the trial courthouse."

The petitioner stated results of the decision that should be in review from this court, decisions that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the Untied States.

Wherefore, your petitioner respectfully requests that a Certificate of Appealability be issued.

Dated: November 5, 2018

Petitioner

(16)

AO 241
(Rev. 06/13)

# Petition for Relief From a Conviction or Sentence
## By a Person in State Custody

### (Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus)

### Instructions

1.  To use this form, you must be a person who is currently serving a sentence under a judgment against you in a state court. You are asking for relief from the conviction or the sentence. This form is your petition for relief.

2.  You may also use this form to challenge a state judgment that imposed a sentence to be served in the future, but you must fill in the name of the state where the judgment was entered. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file a motion under 28 U.S.C. § 2255 in the federal court that entered the judgment.

3.  Make sure the form is typed or neatly written.

4.  You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

5.  Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a brief or arguments, you must submit them in a separate memorandum.

6.  You must pay a fee of $5. If the fee is paid, your petition will be filed. If you cannot pay the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out the last page of this form. Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you. If your account exceeds $ _____ , you must pay the filing fee.

7.  In this petition, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different court (either in the same state or in different states), you must file a separate petition.

8.  When you have completed the form, send the original and ____ copies to the Clerk of the United States District Court at this address:

    Clerk, United States District Court for
    Address
    City, State  Zip Code

9.  **CAUTION:** You must include in this petition all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

10. **CAPITAL CASES:** If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.

Revised 05/01 WDNY

# AUTHORIZATION

## PRISONER'S CIVIL ACTION FILING FEE
## WESTERN DISTRICT OF NEW YORK

I, (print name) ___John Love_____, request and
authorize the agency holding me in custody, to send to the Clerk of the United States District
Court, Western District of New York, a certified copy of the statement for the past six months
of my trust fund account (or institutional equivalent) at the institution where I am incarcerated.

I further request and authorize the agency holding me in custody to calculate and disburse
funds from my trust account (or institutional equivalent) in the amounts specified by 28 U.S.C.
§ 1915 (b), to deduct those amounts from my prison trust account (or institutional equivalent),
and to disburse those amounts from my account to the United States District Court for the
Western District of New York.

> *This Authorization shall apply to any other agency into whose custody I may be
> transferred, and to any other district court to which my case may be transferred
> and by which my poor person application may be decided.*

This Authorization is furnished in connection with the commencement of a federal court civil
action, and I understand that I must pay the total amount of the filing fee, which is ~~$350.00~~ $5

**I understand that by signing this authorization, the entire filing fee of
$5 ~~$350.00~~ will be paid to the court in installments by automatic deductions
from my prison trust fund account <u>even if my case is dismissed before the
entire amount of the fee has been deducted from my account.</u>**

Dated: ___March_____, 20_17_

___John L. Love_____
Signature of prisoner

___John L. Love_____
Printed name of prisoner

___11-B-1782_____
Inmate number of prisoner

UNITED STATES DISTRICT COURT             Revised 05/01 WDNY
WESTERN DISTRICT OF NEW YORK
John L. Love
Coxsackie Corr. Facility

            Plaintiff,          _____-CV-_____

Daniel F. Martuscello, Superintendant   APPLICATION FOR APPOINTMENT OF COUNSEL
Coxsackie Correctional Facility

            Defendant(s).

My name is _____ John L. Love _____ and I am the plaintiff in the above action. I hereby apply to the Court for appointment of counsel to represent me in this action. In support of this application, I ask the court to consider the following information:

     1.      My case concerns the following issue(s) (briefly summarize your case): Federal Habeas Corpus, Violation of the Sixth and Fourteenth Ammendment to the U.S Constitution.

     2(a).      I am unable to retain an attorney to represent me because I do not have the funds to do so.

     2(b).      **[Fill this in if true]**      I have applied for leave to proceed *in forma pauperis*. My motion to proceed as a poor person was filed on _____

     2(c).      **[Fill this in if true]**      By Court Order filed on _____
I was granted leave to proceed as a poor person pursuant to 28 U.S.C. § 1915.

     3(a).      I have attempted to find my own attorney but have been unable to do so because _____

     3(b).      I have discussed my case with the following attorneys (include attorney's name and telephone number, and attach any correspondence which indicates that an attorney has declined to represent you): _____
David M. Abbatoy, Jr. THE ABBATOY LAW FIRM
45 Exchange Boulevard, Suite 925 Rochester, NY 14614
585-348-8081

     4.      I believe that the following circumstances demonstrate why the Court should grant my request for an appointed attorney: In the State Court I was not appointed an attorney to represent me on my CPL 440 motion to vacate claiming ineffective assistance of trial counsel, as is required by the Supreme Court, see Martin v. Ryan, 132 S.Ct. 1309 (2012).

     WHEREFORE, plaintiff asks this Court to appoint an attorney to represent plaintiff in this action.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information and belief.

3-7-17                  *John L. Love*
_____                  _____
DATE                           SIGNATURE

Page 2

AO 241
(Rev. 06/13)

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: WESTERN, NEW YORK |
|---|---|

| Name (under which you were convicted): JOHN L. LOVE | Docket or Case No.: |
|---|---|

| Place of Confinement : COXSACKIE CORR. FACILITY | Prisoner No.: 11-B-1782 |
|---|---|

| Petitioner (include the name under which you were convicted) JOHN L. LOVE 11-B-1782 COXSACKIE CORR. FACILITY P.O. BOX 999 COXSACKIE, NY 12051-0999 | v. | Respondent (authorized person having custody of petitioner) DANIEL F. MARTUSCELLO SUPERINTENDENT COX. CORR. COXSACKIE, NY 12051-0999 |
|---|---|---|

The Attorney General of the State of    NEW YORK

## PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

COUNTY COURT   HALL OF JUSTICE

CIVIC CENTER PLAZA

ROCHESTER, NY 14614

(b) Criminal docket or case number (if you know):   IND. NO. 2010-1053

2.  (a) Date of the judgment of conviction (if you know): MAY 19, 2011

(b) Date of sentencing:   JUNE 8, 2011

3.  Length of sentence:   15 YEARS + 5 YEARS POST RELEASE

4.  In this case, were you convicted on more than one count or of more than one crime?   ☒ Yes   ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case:   RAPE 1, RAPE 3

6.  (a) What was your plea? (Check one)

☒ (1)    Not guilty    ☐ (3)    Nolo contendere (no contest)

☐ (2)    Guilty    ☐ (4)    Insanity plea

AO 241
(Rev. 06/13)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did
you plead guilty to and what did you plead not guilty to?                    ---NA---

_____

_____

_____

_____

_____

(c) If you went to trial, what kind of trial did you have? (Check one)

    ☒ Jury    ☐ Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

    ☐ Yes    ☒ No

8.    Did you appeal from the judgment of conviction?

    ☒ Yes    ☐ No

9.    If you did appeal, answer the following:

(a) Name of court: Supreme Court, Appellate Division : Fourth Dept.

(b) Docket or case number (if you know):   KA11- 01664

(c) Result:   Affirmed

(d) Date of result (if you know):   December 31, 2015

(e) Citation to the case (if you know):   Peole v. Love, 134 AD 3d 1569 4 Dept. 2015

(f) Grounds raised: Court erred in admitting evidence the recording of
the victim's call to 911 as an excited utterance. The verdict
was against the weight of the evidence. The Prosecutor engaged
in misconduct in her opening and closing statements.

_____

_____

(g) Did you seek further review by a higher state court?    ☒ Yes    ☐ No

    If yes, answer the following:

    (1) Name of court: New York State Court of Appeals

    (2) Docket or case number (if you know):   KA 11-01664

    (3) Result:   Leave to appeal denied

    (4) Date of result (if you know):   March 23, 2016

AO 241
(Rev. 06/13)

(5) Citation to the case (if you know): 27 N.Y. 3d 967

(6) Grounds raised: Same as Appellate Division (see 9.f)

See attached sheet

(h) Did you file a petition for certiorari in the United States Supreme Court?  ☐ Yes  ☒ No

If yes, answer the following:

(1) Docket or case number (if you know): ---NA---

(2) Result: ---NA---

(3) Date of result (if you know): ---NA---

(4) Citation to the case (if you know): ---NA---

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?  ☒ Yes  ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: County Court Hall of Justice Civic Center Plaza Rochester, NY 14614-2184

(2) Docket or case number (if you know): 2010-1053

(3) Date of filing (if you know): August 29, 2014

(4) Nature of the proceeding: CPL. ARTICLE 440.10 MOTION TO VACATE

(5) Grounds raised: Trial counsel's performance was ineffective under the Sixth Amendment. Strickland v. Washington, 466 U.S. 688 (1984). (2) Trial counsel's performance was deficient and this deficient performance prejudiced the defense, meaning that counsel's errors were serious enough to undermine confidence in the outcome of the trial.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes  ☒ No

(7) Result: The motion was denied without a hearing.

(8) Date of result (if you know): August 5, 2016

AO 241
(Rev. 06/13)

(b) If you filed any second petition, application, or motion, give the same information:

    (1) Name of court:      ---NA---

    (2) Docket or case number (if you know):      ---NA---

    (3) Date of filing (if you know):      ---NA---

    (4) Nature of the proceeding:      ---NA---

    (5) Grounds raised:      ---NA---

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

    ☐ Yes     ☒ No

    (7) Result:      ---NA---

    (8) Date of result (if you know):      ---NA---

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court:      ---NA---

    (2) Docket or case number (if you know):      ---NA---

    (3) Date of filing (if you know):      ---NA---

    (4) Nature of the proceeding:      ---NA---

    (5) Grounds raised:      ---NA---

Page 6

AO 241
(Rev. 06/13)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☒ No

(7) Result:      – N A –

(8) Date of result (if you know):      – N A –

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:    ☒ Yes    ☐ No

(2) Second petition:    ☐ Yes    ☒ No

(3) Third petition:    ☐ Yes    ☒ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

     **CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:** The jury's verdict was againts the weight of the evidence because the complainant's version of events was inconsistent and the physical evidence did not corroborate her version of events.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

None of the physical evidence corroborated the girls version of the events, and the physical evidence that was presented was either incredible or equivocal with respect to sexual activity.

_____

_____

(b) If you did not exhaust your state remedies on Ground One, explain why: _____

_____

_____

_____

_____

_____

AO 241
(Rev. 06/13)

(c)     **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☒ Yes     ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:     – NA –

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes     ☒ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:     – NA –

Name and location of the court where the motion or petition was filed:     – NA –

Docket or case number (if you know):     – NA –

Date of the court's decision:     – NA –

Result (attach a copy of the court's opinion or order, if available):     – NA –

(3) Did you receive a hearing on your motion or petition?     ☐ Yes     ☒ No

(4) Did you appeal from the denial of your motion or petition?     ☒ Yes     ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ☒ Yes     ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:     Appellate Division 4th Dept.
M. DOLORES DENMAN COURT HOUSE
50 EAST AVENUE-SUITE 200 ROCHESTER, NEW YORK 14604

Docket or case number (if you know):     KA11-01664

Date of the court's decision:     March 23, 2016

Result (attach a copy of the court's opinion or order, if available):

Copy of Denial attached

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

– NA –

Page 8

AO 241
(Rev. 06/13)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have
used to exhaust your state remedies on Ground One: _____

_____

**GROUND TWO:**            See attached sheet

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

          See attached sheet

The prosecutor failed to lay the foundation for an "Excited
Utterance or Present Sense Impression".
Admitting the 911 call into evidence violated the rule related
to the admissibility of "Prompt Complaint" evidence in a case
of sexual assault.

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

_____

(c)     **Direct Appeal of Ground Two:**

        (1) If you appealed from the judgment of conviction, did you raise this issue?      ☒ Yes      ☐ No

        (2) If you did not raise this issue in your direct appeal, explain why: _____

        _____

(d)     **Post-Conviction Proceedings:**

        (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

              ☒ Yes      ☐ No

        (2) If your answer to Question (d)(1) is "Yes," state:

        Type of motion or petition:    440.10 Motion to Vacate

        Name and location of the court where the motion or petition was filed:    Supreme Court

        Hall of Justice, Rochester, NY 14614-2184

        Docket or case number (if you know): _2010-1053____

        Date of the court's decision:  August 5, 2016

AO 241
(Rev. 06/13)

Result (attach a copy of the court's opinion or order, if available): $\quad$ –NA–

_____  _____  _____

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☒ No

(4) Did you appeal from the denial of your motion or petition? ☐ Yes ☒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☐ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Two: $\quad$ –NA–

_____

_____

**GROUND THREE:**  See attached sheet

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

A prosecutor may not shift the burden of proof or vouch for the

credibility of the complaining witness.

_____

_____

_____

AO 241
(Rev. 06/13)

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

(c)     **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☒ Yes     ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

     ☐ Yes     ☒ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:     440.10 Motion to vacate

Name and location of the court where the motion or petition was filed:     Supreme Court

County of Monroe, 545 Hall of Justice Rochester, NY 14614-2184

Docket or case number (if you know):     2010-1053

Date of the court's decision:     August 5, 2016

Result (attach a copy of the court's opinion or order, if available):     The motion was denied

without a hearing.

(3) Did you receive a hearing on your motion or petition?     ☐ Yes     ☒ No

(4) Did you appeal from the denial of your motion or petition?     ☐ Yes     ☒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ☐ Yes     ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

AO 241
(Rev. 06/13)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _____

_____

_____

**GROUND FOUR:** _____ See attached sheet _____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

    See Affirmation Memorandum of Law in support of Ground Four

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

_____

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?      ☐ Yes   ☒ No

(2) If you did not raise this issue in your direct appeal, explain why:   because Appellate
counsel David M. Abbatoy advised me to withdraw 440 motion
until direct appeal was heard.   (See attached sheet-letter)

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☒ Yes   ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:   CPL. 440. 10 _____

AO 241
(Rev. 06/13)

Name and location of the court where the motion or petition was filed:  Supreme Court

Hall of Justice, Civic Center Plaza, Rochester,NY 14614-2184

Docket or case number (if you know):  2010-1053

Date of the court's decision:  August 5, 2016

Result (attach a copy of the court's opinion or order, if available):  see court decision

and order (attached sheet)

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☒ No

(4) Did you appeal from the denial of your motion or petition?  ☒ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☒ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:  Appellate Division 4th Dept.
M.DOLORES DENMAN COURT HOUSE
     50 EAST AVENUE SUITE 200 ROCHESTER, NEW YORK 14604

Docket or case number (if you know):  see attached leave application

Date of the court's decision:  March 31, 2016

Result (attach a copy of the court's opinion or order, if available):  see attached oreder

of denial.

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:
                    -NA-

(e)  **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four:  -Na-

Case 18-3037, Document 11, 11/08/2018, 2430089, Page33 of 90

Page 13

AO 241
(Rev. 06/13)

13.     Please answer these additional questions about the petition you are filing:

(a)     Have all grounds for relief that you have raised in this petition been presented to the highest state court

having jurisdiction?     ☒ Yes     ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

presenting them: _____

_____

_____

_____

(b)     Is there any ground in this petition that has not been presented in some state or federal court? If so, which

ground or grounds have not been presented, and state your reasons for not presenting them:

_____ –NA– _____

_____

_____

14.     Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction

that you challenge in this petition?     ☐ Yes     ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues

raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy

of any court opinion or order, if available.     _____ –NA– _____

_____

_____

_____

_____

_____

15.     Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for

the judgment you are challenging?     ☐ Yes     ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues

raised.     _____ –NA– _____

_____

_____

_____

AO 241
(Rev. 06/13)

16.  Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:  Public Defender's Office
10 Fitzhugh Street Rochester, NY 14614

(b) At arraignment and plea:  Public Defender

(c) At trial:  Mr. Doran/Public Defender

(d) At sentencing:  Mr. Doran

(e) On appeal:  David M. Abbatoy, Jr. THE ABBATOY LAW FIRM
45 Exchange Boulevard, Suite 925 Rochester, NY 14614

(f) In any post-conviction proceeding:  None

(g) On appeal from any ruling against you in a post-conviction proceeding:  None

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?  ☐ Yes  ☒ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:  -NA-

(c) Give the length of the other sentence:  -NA-

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?  ☐ Yes  ☐ No  -NA-

18.  TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

-NA-

AO 241
(Rev. 06/13)

See attached sheet for grounds 1-4.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in

part that:

(1)  A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

   (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

   (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

## SUPPORT OF GROUNDS ONE - FOUR.

Point I: THE JURY'S VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE BECAUSE THE COMPLAINANT'S VERSION OF EVENTS WAS INCONSISTENT AND THE PHYSICAL EVIDENCE DID NOT CORROBORATE HER VERSION OF EVENTS.

- None of the physical evidence corroborated the girls version of the events, and the physical evidence that was presented was either incredible or equivocal with respect to sexual activity. Tibbs v. Florida, 457 U.S. 31, 42, 102 S. Ct. 2211, 72 L. Ed 2d 652.

Point II: THE LOWER COURT ERRED BY ADMITTING INTO EVIDENCE AN UNAUTHENTICATED 911 CALL THAT DID NOT MEET DEFINITION OF THE "PRESENT SENSE IMPRESSION" EXCEPTION AND ALSO FAILED TO COMPLY WITH THE RESTRICTIONS PLACED ON THE USE OF PROMPT COMPLAINT EVIDENCE. U.S. CONST. AMEND XIV, N.Y. CONST. ART.1, SEC. 6 (DUE PROCESS OF LAW).

- The Prosecutor Failed to Lay the foundation for an "Excited Utterance or Present Sense Impression"

- Admitting The 911 Call Into Evidence Violated The Rule Related to the Admissibility of "Prompt Complaint" Evidence in a Case of Sexual Assault.

Point III: THE PROSECUTOR ENGAGED IN MISCONDUCT IN HER OPENING AND CLOSING STATEMENTS BY SHIFTING THE BURDEN OF PROOF AND VOUCHING FOR THE CREDIBILITY OF THE COMPLAINING WITNESS.

- A Prosecutor May Not Shift the Burden of Proof or Vouch for the Credibility of Her Witness. U.S. v. Young, 470 US1, 18-19 (1985); Davis V. Alaska 415 US 308, 315 (1974) (U.S. Const. Amend. VI, XIV, N.Y. Const. Art I, Sec. 6.

Point IV: This court should issue a writ of habeas corpus pursuant to 28 U.S.C. 2254, because petitioner's trial counsel was ineffective under Strickland v. Washington, 466 U.S. 668 (1984) and related cases as set forth in petioner's memorandum of law for counsel's failure to recognize electronic evidence generated by the complaining witness in this Rape case which would effect her credibility and believability of her accusations; and counsel's failure to obtain a child psychology experts opinion of the electronic evidence as is petitioner's right under the Constitution.

AO 241
(Rev. 06/13)

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:   Appoint counsel under
C.J.A.; order a hearing to be held pursuit to 28 U.S.C. 2254
and at the conclusion determine weather petitioner suffered the
loss of his Sixth Amendment Right to affective assistance of
counsel.
or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on _____ (month, date, year).

Executed (signed) on _3 - 30 - 17_ (date).

_John L. Love_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_____

_____

_____

# THE ABBATOY LAW FIRM, PLLC

339 East Avenue, Rochester, New York 14604

April 2, 2015

Mr. John Love, 11-B-1782
COXSACKIE CORRECTIONAL FACILITY
PO Box 999
Coxsackie, New York 12051-0999

RE:   Appeal

Dear Mr. Love:

I am in receipt of your CPL §440 Motion that you have filed with the Monroe County Court on or about March 5, 2015. I have read your arguments, and I believe that *Gursten v. Senkowski* contains strong appellate arguments regarding ineffective assistance of counsel. Generally, however, I advise clients to wait until after their appeal has been decided to bring a 440 Motion. There are a number of reasons why this is true, the first is that the way an appellate court decides an appeal often gives clues as to what arguments may be made on a CPL §440 Motion. I have also found that when clients bring a *pro se* motion, the courts are all too willing to simply dismiss the 440 Motion on the grounds that the issue may be raised on the pending appeal. This often places the client in a Catch 22. Since you only have one opportunity to make a CPL §440 Motion, it is best to know all of the arguments that are available to be made at one time. Moreover, you do not want to lose your single right to file such a motion after having lost the motion on a procedural issue that could have been clarified after waiting for the appeal.

I expect to perfect the appeal in your case before May 29, 2015, and so I do not believe that there will be too much more of wait associated with your case. Although you do not have to accept my advice at all on this subject, if you do wish to delay the determination of your 440 Motion, you could simply write to the court and say that you are withdrawing your motion at this time and will be refiling after your appeal has been determined. In the alternative, you could simply ask the court to hold the determination of your 440 Motion in abeyance pending the appeal, with the understanding that you may supplement the motion at a later date.

Please feel free to contact me if you have any further questions or concerns.

Very truly yours,

David M. Abbatoy, Jr.
THE ABBATOY LAW FIRM, PLLC

# State of New York
# Court of Appeals



BEFORE:  HON. JANET DIFIORE, Chief Judge

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

-against-

JOHN L. LOVE,                                   Appellant.

**ORDER DENYING LEAVE**

     Appellant having applied for leave to appeal to this Court pursuant   Procedure Law §

460.20 from an order in the above-captioned case;*

     UPON the papers filed and due deliberation, it is

     ORDERED that the application is denied.

Dated:  MAR 2 3 2016

Chief Judge

*Description of Order:  Order of the Appellate Division, Fourth Department entered December 31, 2015, affirming a judgment of the County Court, Monroe County, rendered June 8, 2011.

STATE OF NEW YORK
COUNTY COURT                    COUNTY OF MONROE

---

THE PEOPLE OF THE STATE OF NEW YORK,


                          -vs-                          Ind. No.: 2010-1053

JOHN L. LOVE,

                    Defendant.

---

APPEARANCES:


*For the People:*      SANDRA DOORLEY, ESQ.
                       MONROE COUNTY DISTRICT ATTORNEY
                       Stephen X. O'Brien, Esq., Of Counsel
                       Monroe County District Attorney's Office
                       47 South Fitzhugh Street
                       Rochester New York 14614


*For the Defendant:*   JOHN L. LOVE, *pro se*
                       DIN 11-B-1782
                       Coxsackie Correctional Facility
                       P.O. Box 999
                       Coxsackie, NY 12051


## DECISION AND ORDER

CIACCIO, J.

The Court is in receipt of defendant's motion to vacate judgment pursuant to CPL

§440.10 dated August 29, 2014. The People filed Answering Affirmations in Opposition dated

March 17, 2015 and February 9, 2016. Defendant filed an additional submission dated February

2, 2016. The Court has reviewed all of the papers filed by the parties and what follows is the Court's Decision and Order on defendant's motion to vacate judgment pursuant to CPL §440.10.

In 2011, defendant was convicted of Rape in the First Degree and Rape in the Third Degree, based on engaging in sexual intercourse with his 15 year old daughter in the early morning hours of November 21, 2010. He was sentenced to an aggregate term of incarceration of 15 years with 5 years of post-release supervision. Defendant's conviction was unanimously affirmed on appeal (*People v Love*, 134 AD3d 1569 [4th Dept. 2015]).

Having reviewed the papers submitted by the defendant in support of the relief requested, along with the People's response thereto, and after due consideration of the arguments raised by the respective parties, the Court finds that defendant's motion is determinable without a hearing (CPL §440.30, *People v Satterfield*, 66 NY2d 796, 799 [1985], *People v Crippen*, 196 AD2d 548 [2nd Dept. 1993], *lv denied* 82 NY2d 848 [1993]).

Defendant claims that he was denied his right to effective assistance of counsel. In New York, effective assistance of counsel is provided when "the evidence, the law and the circumstances of the particular case, viewed in totality and as of the time of the representation reveal that the attorney provided meaningful representation (*People v Baldi*, 54 NY2d 137, 147 [1981]).

The federal standard for ineffective assistance of counsel is that the defendant must prove that "counsel's representation fell below an objective standard of reasonableness" *(Strickland v Washington*, 466 US 668, 688 [1984], and "that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different" (*Graham v Portuondo*, 732 F.Supp.2d 99, 114 [EDNY 2010]).

The role of a court in determining a motion to vacate judgment is not to second guess whether defense counsel's strategy "was the best strategy, or even a good one, so long as the defendant was afforded meaningful representation" (*People v Satterfield*, 66 NY2d 796, 799-800 [1985]). Trial strategies that might well have been pursued by reasonably competent counsel and are objectively reasonable satisfy the constitutional standard (*see id.* at 799).

"To prevail on a claim of ineffective assistance of counsel...[a] defendant must demonstrate the absence of [a] strategic explanation[] for counsel's [choice not to pursue a certain course of action] and "[a]bsent such a showing, it [is] presumed that counsel acted in a competent manner and exercised professional judgment" (*People v Rivera*, 71 NY2d 705, 709 [1988]; *People v Benevento*, 91 NY2d 708, 712 [1998]).

Defendant first argues that his counsel was ineffective for not objecting during the prosecutor's summation when she referred to the victim's weight as being 140 pounds. As noted by the People, it was in fact defense counsel that elicited testimony regarding the complainant's weight, and the jury was certainly able to assess her weight since she did testify at trial.

He also contends that his counsel was ineffective for failing to utilize a "Facebook" picture of the complainant (attached as an Exhibit to defendant's motion) that was apparently provided to his counsel in December of 2010. Defendant does not clearly explain how or why this picture would have been relevant at trial, but the Court can infer from his moving papers that perhaps he feels his counsel should have argued to the jury that complainant's weight contradicts her testimony regarding the "forcible compulsion" element of rape in the first degree, of which he was convicted. The Court first notes that this picture might not have even been admissible at trial, but even assuming it was, and that defense counsel was in possession of it, again the jury

was able to view both defendant and the complainant during trial. A strategic decision by defense counsel not to attempt to use it at trial is certainly reasonable.

However, further analysis is required in regard to defendant's claim that his counsel was ineffective for not calling an expert to refute the medical evidence presented by the People. Specifically, he claims that an expert should have been presented to contradict testimony of Nurse Debra Ann Crasti that "'neovascularization' of the 'posterior fourchette'" was evidence of a sexual assault.

The People correctly note that Nurse Crasti's testimony was that there was a "tear" in the complainant's posterior fourchette of the hymen, as well as redness, and blood in the complainant's cervical opening which led her to conclude that "there was some type of assault or some type of force that created a tear…" She specifically stated that she could not "diagnose as a sexual assault." Nonetheless, the Court finds that this testimony was significant evidence at trial. The Court also notes that defense counsel conducted a vigorous cross-examination of Nurse Crasti, during which he suggested that there could have been numerous causes of what she observed during her examination of the complainant.

"[I]t is exceedingly rare that a defense attorney's strategic decision not to present expert testimony amounts to ineffective assistance of counsel" (*People v Caldavado*, 26 NY3d 1034, 1036 [2015]). Yet, this Court is mindful of recent decisions in which appellate courts have reversed the summary denial of a defendant's CPL §440.10 motion and remitted the case back for a hearing on the issue of ineffective assistance of counsel (*see, i.e., People v Washington*, 128 AD3d 1397 [4th Dept 2015], *People v Conway*, 118 AD3d 1290 [4th Dept 2014]).

In *Gersten v Senkowski*, 426 F3d 588 (2nd Cir 2005), cited by defendant in his moving papers, the Second Circuit affirmed the granting of defendant's petition for a federal writ of

*habeas corpus* on ineffective assistance of counsel grounds. The Court found that "[I]n sexual abuse cases, because of the centrality of medical testimony, the failure to consult with or call a medical expert is often indicative of ineffective assistance of counsel…This is particularly so where the prosecution's case, beyond the purported medical evidence of abuse, rests on the credibility of the alleged victim…" *Id.*, at 607.

Here, defendant has not submitted to this Court any expert affidavit, which would indicate potential medical testimony more favorable to defendant. While the Court understands that defendant claims that he did attempt to consult with a medical expert, there is no expert affidavit submitted for this Court's review.

In addition, the direct evidence at trial did not consist solely of the complainant's testimony. Other evidence includes her almost immediate 911 call reporting the rape (the audio was entered into evidence), corroborating testimony of defendant's grandmother, and defendant's statements to police, admitting to inappropriately touching his daughter.

Considering all of the facts discussed above, including defense counsel's effective cross-examination of Nurse Crasti (*see People v Gross*, 118 AD3d 1383 [4th Dept 2014]), counsel can hardly be deemed ineffective. Defendant's submission does not raise a factual issue that requires a hearing.

Defendant's motion to vacate judgment is hereby DENIED.

This constitutes the Decision and Order of the Court.

Dated this 5th day of August, 2016 at Rochester, New York

_____
**HON. CHRISTOPHER S. CIACCIO**
**MONROE COUNTY COURT JUDGE**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____x

United States of America,
ex rel:

                                  AFFIRMATION AND MEMORANDUM
                                  OF LAW IN SUPPORT OF
John L. Love,                     PETITION FOR WRIT OF
                                  HABEAS CORPUS PURSUANT TO
            Petitioner,           28 U.S.C. 2254.

              -v-

Daniel F. Martuscello,           _____Civ._____
Superintendent, Coxsackie
Correctional Facility,

            Respondent.

_____x    GROUND FOUR


    John L. Love, the petitioner herein, hereby affirms under
penalty of perjury that the following statements are true,
except those made upon information and belief, which he believes
to be true.

    The facts of this case, its procedural history and petitioner's
arguments in support of Grounds I,II and III are set forth in
the briefs to the Appellate Division Fourth Department and in
appellate counsel's Request for Leave to Appeal to the New York
Court of Appeals. This Memorandum is submitted because the
arguments made herein refer to the C.P.L. 440.10 motion to vacate
the judgement (Ground IV in petition), for petitioner being denied
the effective assistance of counsel Constitutionally required
under Strickland v. Washington, 466 U.S. 668 (1984).

> THIS COURT SHOULD ISSUE THE WRIT OF
> HABEAS CORPUS BECAUSE TRIAL COUNSEL
> WAS INEFFECTIVE FOR IGNORING THE
> ELECTRONIC EVIDENCE GENERATED ON
> FACEBOOK BY THE COMPLAINING
> WITNESS WHICH WOULD UNDERMINE HER
> CREDIBILITY AND BELIEVABILITY TO
> THE JURY.

On December 27, 2010, Patricia McNair, petitioner's best friend, discovered on Facebook a picture posted by petitioner's daughter, Zandi, the complaining witness in the case against petitioner. The Facebook photo displayed Zandi herself with the writing across the front in large bold lettering, "I consider myself innocent until proven guilty". (See, Facebook photo exhibit).

Patricia McNair, immediately understood that Zandi's Facebook posting could be useful to petitioner who was locked in the county jail awaiting trial for the rape of his daughter. McNair contacted petitioner's mother Willie Mae Love and gave her a copy of the "Facebook" photo, took a copy to petitioner's lawyer Michael Doran via his secretary (Doran not in office) and gave a copy to petitioner. (See, CPL 440 motion, page 5).

Defense counsel did nothing with this photo evidence of the complaining witness's state of mind nor did he seek out the opinion of an expert witnesss in child psychology on this obviously important piece of material information coming directly from the complaining witness in a case he was defending.

-2-

Patricia McNair checked back the next day on Facebook, but only this time the photo of Zandi was there without the writing across the front saying "I consider myself innocent until proven guilty". [actual words - ee ii consider maa self innocent until proven guiltee] Apparently, Zandi deleted the writing after she discovered or someone told her that it was not a good idea.

Petitioner confronted his trial lawyer on Public Defender night in the County Jail, about the use of the Facebook photo and was told by Mr. Doran that "tell your mother and girlfriend to stop coming to my office, telling my boss and bothering me about some photo".

FED.R.EVID. 803(1)-(23), 804(b)(1)-(6) provides many exceptions for certain types of hearsay that are nonetheless admissible because the statement has some degree of inherent trustworthiness. Several exceptions may apply. For example, exceptions for declarant's present sense impression, excited utterance, or "[t]hen [e]xisting [m]ental, [e]motional, or [p]hysical [c]ondition".

Petitioner and his mother continued to attempt to get the photo noted by attempting to obtain an affidavit and opinion from expert witness Dr. Jocelyn Brown who testified in Gersten v. Senkowski, 426 F.3d 588 (2nd Cir. 2005) and Medilex, 69 East 130th. Street, New York, N.Y. 10037, and were told that they "only accept cases/correspondance from attorneys, and never from litigants themselves (i.e. pro se), if you have an attorney

-3-

s/he may contact us". See, motion to vacate, page 6, and exhibits attached.

Petitioner was convicted without ever having an expert witness to testify for the defense about the significance of the Facebook photo. At sentencing petitioner made a last ditch effort, pitiful really, to alert the sentencing court, "I had some picture of her from off the internet that I thought would be some good evidence, but I guess that didn't show up". (Sentencing minutes of June 6, 2011, page 9).

<u>THE LAW</u>

The 440 Court in the Order and decision denying petitioner any relief without a hearing, based it's reasoning on two erroneous points. First is that the court claims it cannot understand what the Facebook photo of the complaining witness means? Is it submitted to show how much she weigh?

Second, petitioner is faulted once again for not obtaining an affidavit from an expert witness to support his claims in the motion to vacate.

<u>Counsel</u>. Martinez v. Ryan, U.S., 132 S.Ct.1309 (2012) "Where under state law, Claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding there was no counsel or counsel in that proceeding was ineffective".

-4-

In New York, all "extra record" (outside of the trial record claims) are encouraged to be presented in an Article 440 motion to vacate where the trial court can better deal with the matter and hold hearings rather than the Appellate Divisions. Petitioner asked the 440 court to appoint counsel to represent him, which would have allowed the expert witness, Dr. Jocelyn Brown and Medilex to give their opinions on the electronic evidence Facebook photo. The 440 Court refused to assign counsel.

CONSTITUTIONAL RIGHT TO EXPERT. In 1985 the United States Supreme Court in Ake v. Oklahoma, 470 U.S. 68 (1985) recognized for the first time, a constitutional right to expert assistance. In Williams v. Martin 612 F.2d 1021 (4th Cir. 1980) some five years before Ake, the court said "An indigent prisoner...Should not be required to present proof of what an expert would say when he is denied access to an expert".

When these rules are applied to the Facebook photo (electronic evidence) that petitioner, his friend and his mother gave to trial counsel, but he refused to consult an expert as to the photo's viability, he was ineffective under Strickland v. Washington, 466 U.S. 668 (1984). See also, Gersten v. Senkowski, 426 F. 3d. 588 (CA2d, 2005), Eze v. Senkowski, 321 F.3d at 131, 132.

-5-

Also Miller v Senkowski, 268 F. Supp. 2d 296, 311-312 (E.D.N.Y. 2003), discussing counsel's failure to rebut the testimony of the prosecutions child psychologist, but finding counsel's performance ineffective based solely on his failure to call or consult with a medical expert with respect to the questionable physical evidence of the <u>hymen</u>.

## ADMISSION OF ELECTRONIC EVIDENCE.

In terms of admissibility, courts treat electronically stored information the same as conventional types of evidence. Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534 (D.Md. 2007); United States v. Saddiqui, 235 F.3d 1318 (11th Cir. 2007), Cert. denied 2001, US Lexis 4878 (2001). Evidence can be properly authenticated with evidence that is sufficient to support a finding that the matter in question is what its proponent claims it is. Lorraine v. Markel, supra; United States v Simpson, 152 F. 3d 1241 (10th Cir. 1998). Siddiqui, supra at 1322; FED.R.EVID. 901(a). This can be done circumstantially by apperance, content, substance, internal patterns or other distinctive characteristics of the evidence. Siddiqui, supra.

Lorraine supra 565, significance...lies soley in the fact that it was made and it is not "offered to prove its substantive truth" but rather "for some other purpose it is not hearsay (quoting FED.R.EVID 801(c), has relevance simply because [it was] made regardless of [its] literal truth or falsity". (quoting Weinstein at §801.11[3]-[4].)

-6-

(Lorraine, supra, 241 F.R.D. at 542-543), and that decisions as to the admissibility of such items "are to be evaluated on a case-by case basis as any other document to determine whether or not there has been an adequate foundational showing of their relevance and authenticity"

The burden of proof for authentication is not high. United States v. Gagliardi, 506 F.3d 140 (2nd Cir. 2007). In fact, the court need only find that there is a "reasonable likelihood" that the evidence is what its proponent claims.

The person seeking to introduce the evidence does not have to rule out all possibilities inconsistent with authenticity. United States v. Pluta, 176 F.3d 43, 39 (2nd Cir. 1999). All of these can be found in the case People v. Moye, 2016 WL 1708504, 2016 N.Y. Slip Op. 50699(U), No.2138/2014. March 31,2016. Defendant's picture posting on Facebook from an account bearing the defendant's nickname and photo. All facts demonstrate knowledge of the crime. See also, Cambell v. Texas, 328 SW3d 545 (2012 Tex. App. Lexis 7684 (Tex. App 2012) "All of these circumstances together are sufficient to establish a reasonable likelihood that the writing came from the defendant and is sufficient authentication".

Tienda v. State (2010 WL 5129722) Court of Appeals of Dallas, Texas. The inherent nature os social networking websites encourages members who choose to use pseudonyms to identify themselves by posting profile pictures or descriptions of their physical appearances, personal backgrounds, and lifestyles. This type of individualization is significant in authenticating a particular profile page and having been created by the person depicted in it. The more particular and individualized the information, the greater the support for a reasonable juror's finding that the person depicted supplied the information.

FED.R.EVID. 401 (The test for revelance: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action.")

As demonstrative evidence, the photograph's low bar to relevance worked in tandem with its low bar of authenticity. Just as the standard for relevance as applied to photographic evidence became codified in Rule 401 of the Federal Rules of Evidence, the standard for authenticity as applied to photographic evidence became codified in Rule 901. Demonstrative photographs were described as "pictorial testimony," used to explain and illustrate the testimony of the witness, and most commonly authenticated by a knowledgeable witness who testifies that the photograph accurately represents the scene depicted at the relevant time.

-8-

FED.R.EVID. 901(b)(1) allows evidence to be authenticated by testimony of a witness with knowledge "that a matter is what it claims to be. A witness could testify under oath that she saw a user log into or <u>post</u> content onto the particular profile offered into evidence.

Petitioner's trial counsel was ineffective under <u>Strickland</u>, supra, for disregarding the Facebook photo with the writing across it saying "I consider myself innocent until proven guilty", [actual words- ee ii consider maa self innocent until proven guiltee], without first consulting a "web master" to authenticate the posting.

To authenticate printouts from a website, the party proffering the evidence must produce some statement [see motion to vacate exhibit (b) ] or affidavit from someone with knowledge of the website...for example a Web Master or someone else with personal knowledge would be sufficient. See, People v. Johnson, 51 Misc.3d 450 at 459; 28 N.Y.S. 3d 783.

FED.R.EVID. 801(d)(2) states any content posted anywhere on the social networking website by the party would be admissible as a party admission. Also, much of the content on social media websites will be nonhearsay because it will not be offered to prove the truth of the matter asserted, but rather its value at trial will depend just on the fact that it was said (or "posted," or asserted in some way).

-9-

FED.R.EVID. 804(b)(2) Information found on such profiles should not be looked at as content from a unreliable website, but should instead be regarded as if the words actually came out the user's mouth.

FED.R.EVID. 804(b)(3)(a) users who indiscriminately communicate on their social networking profile could very easily post a statement that is "so far contrary" to their interest that "a reasonable person...would have made [it] only if [they]...believed it to be true; "such a statement could be admitted as exceptional hearsay as a statement against interest.

The Appellate Divison, First Dept. held in Patterson v. Turner Construction Co., 88 A.D 3d 617, 931 N.Y.S. 2d 311 (2011). "These materials may be subject to production just as materials from a personal diary may be discoverable". Social media content inherently possesses the characteristics of circumstantial reliability that the hearsay rules seek to promote. It has a substantial degree of reliability and the requisite guarantee of trust worthiness. Social media evidence is in writing, time stamped, and linked to the profile of a user who reasonably can be deemed to be the author of that content. (The content that the users post--spontaneous blogs, statements that "record peoples thought processes and impressions in unguarded moments, exactly the sort of evidence that can be invaluable during litigation.)

-10-

In People v. Harris, 36 Misc. 3d 868,874; 949 N.Y.S. 2d 590 (Crim.Ct., New York County, 2012). Judge Matthew Sciarrino, pointed out in his decision concerning an "Occupy Wall Street" protester that "[if] you post a tweet, just like you scream it out the window, there is no reasonable exception of privacy.

The fact that petitioner's daughter Zandi removed <deleted> the electronic evidence from her Facebook page just one day after it was posted (and replaced it with just the picture of herself, with no writing) is of no moment.

Petitioner's trial lawyer could have gotten the original posting and authenticated it because "a defendant was entitled to an order granting it access to the plaintiff's current and historical Facebook and Myspace pages and accounts, including all deleted pages and related information. Romano v. Steelecase Inc., (Sept. 21, 2010) 30 Misc.3d 426, 907 N.Y.S. 2d 650. 2010 Slip. Op. 20388.

Facabook Principles, effective as of November 26, 2008, http:/www.facebook.com/policy.php. (last reviewed 6-12-09) states: "Please keep in mind that if you disclose information in your profile or when posting comments, messages, photos, video or other items, this information may become publicly available.

Stored Communications Act, §2703(c)(1)-2703(d), which allows the government to obtain, form communications companies or remote computing services, information such as Facebook posts when there are reasonable grounds to believe it is "relevant and material to an ongoing criminal investigation."

-11-

## INEFFECTIVE ASSISTANCE OF COUNSEL.

Model Rules of Prof. L. Conduct, Rule 1.1, (2013) A defendant's lawyer has a duty to understand social media and its relevance to the matter. By avoiding social media altogether, or by failing to learn about it when needed, he violates his ethical duties and fails to serve his clients interests. In Hunt v. Dresie, 740 P.2d 1046 (Kan.1987). The Kansas Supreme Court held that clients rightfully look to counsel to make reasonable investigations into facts underlying a case. Therefore, the lawyer is obligated to search for the "true facts", especially where the litigants may be motivated by personal animosity.

Model Rules of Prof. L. Conduct, Rule 1.3, requires zealous representation and diligence, including factual investigation. The degree of investigation necessary is based on the specific circumstances of each case. Yet the Duty of competence requires an attorney to at least "discover[] and present readily available evidence". Mr. Doran had a chance to enter the photo into evidence. (See verbatim portion of trial transcript: pg.389,394 18-19).

Model Rules of Prof. L. Conduct Rule 3.4 summarily prohibits lawyers from failing to diligently comply with proper discovery requests.

Model Rule 3.4(d)(2009) says it is unlawful and therefore unethical [for a lawyer] to conceal evidence that is relevant to legal proceeding.

-12-

Lastly, Model Rules 5.3 and 8.4 prohibits a lawyer from using a third party to violate the ethics rules. However, if the third party is not acting under the lawyer's direction, fewer limitations exist.

For example: If the client or a third party (like Patricia McNair) already has direct access to the witness' private social media page, nothing likely prevents them from forwarding private social media content to the lawyer.

The 440 Court in its Decision and Order denied petitioner's motion to vacate because "defendant does not clearly explain how or why the picture would have been relevant at trial, but perhaps he feels his counsel should have argued to the jury that the complaint's weight contradicts her testimony...".(See, Decision and Order, Hon. Christopher S. Ciaccio, dated August 5, 2016).

This evaluation of petitioner's claim of ineffective assistance of counsel can be easily shown to not only be false but incredible that the 440 Court would come to that conclusion.

Petitioner plainly stated in his 440 motion at pg. 5, paragraph 13, and pg. 6 paragraphs 14-16, that the Facebook photo was taken to Mr. Doran's office and left with his secretary because it contained the writing across the front "I consider myself innocent until proven guilty". (See, motion to vacate exibit (b)).

-13-

Petitioner went on to suggest that the Facebook photo's significance might require the consultation of an expert witness on child psychology. Then the petitioner goes on to state how he and his mother attempted to secure the services of an expert child psychologist, and how his trial lawyer simply failed to investigate or consult a child psychologist, performance that was ineffective under <u>Strickland.</u>

All this should have been apparent to the 440 Court. Nowhere in the motion to vacate does the petitioner make mention of the Facebook photo for any reference to the complaint's weight. In fact the picture of my daughter is never refered to, but rather the writing that the photo contains is the central issue.

The second reason the 440 Court used to deny petitioner's motion to vacate is just as hard to believe as the first reason. "Defendant has not submitted to this Court any expert affidavit, which would indicated potential testimony more favorable to the defendant. While the Court understands the defendant claims that he did attempt to consult with a medical expert, there is no expert affidavit submitted for the Court's review".

This erroneous conclusion that the petitioner has failed to submit an expert affidavit is clearly refuted as impossible. See, 440.10 motion to vacate at page 6, para. 15 and exhibits attached.

-14-

Moreover, in petitioner's motion to re-submit the previously withdrawn 440 motion at page 4, para. 10, petitioner addressed this same argument made by the prosecution: "This argument by the prosecution makes no sense". The fact that Dr. Brown and Medilex used the same language in their refusals to provide petitioner with an affidavit, it can be assumed that this is standard practice among doctors who give their expert opinions. (See exhibits, supra).

If that is so, then the prosecutor and the 440 Judge are also aware of this practice and are purposely undermining the 440 motion by stating a maxim that is non-existant. See, petitioner's motion to re-submit previously withdrawn CPL.440.10 application (dated February 2, 2016) pages 1 thru 4 for detailed explication of why the 440 Courts's Decision and Order to deny the 440 motion was clearly erroneous.

(People v. Lawson, 644 N.E. 2d 1172,1191 (Ill.1994) held that the defendant is not required to identify a specific expert or estimate that expert's fees, finding that it would be a constitutional violation when the expert was "necessary to proving a crucial issue in the case". Because to find qualified defense experts is often difficult, unrealistic specificity should not be demanded.

In this case Judge Weinstein has observed: "Courts, as gatekeepers, must be aware of how difficult it can be for some parties--particulary indigent criminal defendants--to obtain an expert to testify. The fact that one side may lack adequate resources with which to fully develop its case is a constant problem".

-15-

Jack B. Weinstein, Science and the Challenges of Expert Testimony in the Courtroom, 77 Or.L.Rev. 1005, 1008 (1998).

The Supreme Court in Martinez v. Ryan, 132 S.Ct. 1309 (2012) capitalized on its Coleman dicta and held that when a state requires its defendants to raise extra--record (off the record) claims that support a claim of ineffective assistance of trial counsel in a initial-review collateral proceeding, a procedural default (e.g defendant's failure to provide an affidavit from a witness to support his claim) will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective under Strickland. (Martinez, 132 S.Ct. at 1320). In that limited circumstance, the habeas petitioner will not be able to demonstrate cause to excuse his procedural default.

A state prisoner needs an effective attorney to raise an ineffective assistance of trial counsel claim, because such claims typically require extra record investigation and an understanding of trial strategy and legal arguments.

-16-

Martinez, 132 S.Ct. at 1320, ("The prisoner, unlearned in law, may not comply with State's procedural rules or may misapprehend the substantive details of federal constitutional law. While confined to prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the record".)

The right to post-conviction counsel becomes a logical and ethical imperative. An assigned attorney serves an invaluable role for the convicted and the imprisoned. They can select cases and issues, vet their merits, reinvestigate facts and science, and raise exclusive post-conviction issues. In other words they create new information outside the record and beyond the current state of knowledge available at the original trial. On the other hand, in their role in information gathering, post-conviction counsels are in position to aid with discovery, evidentiary hearings and can locate preserved but untested evidence.

Lindstadt, 239 F.3d at 210 (citing Beth A. Townsend, Defending the "Indefensible": A Primer to Defending Allegations of Child Abuse, 45 A.F.L. REV. 261, 270 (1998) ("It is difficult to imagine a child abuse case...where the defense would not be aided by the assistance of an expert.")). See generally United States v. Tornowski, 29 M.J. 578, 580 (1989)("There is little question that child sexual abuse cases often present a firtile, indeed, a necessary, area for expert assistance."

-17-

Also as suggested, in United States v. Turner, 28 M.J. 487 (C.M.A. 1989); To assure that indigent defendants will not be at a disadvantage in trials where expert testimony is central to the outcome, the Supreme Court has ruled that a defendant must be furnished expert assistance in preparing his defense...An expert may be of assistance to the defense as a consultant to advise the accused and his counsel as to the strength of the government case and suggest questions to be asked of the prosecution witness, evidence to be offered by the defense, and arguments to be made.

Knott, 671 F.2d at 1212-13 (noting that counsel may be found ineffective for failing to consult an expert where "there is substantial contradiction in a given area of expertise," or where counsel is not sufficiently "versed in a technical subject matter...to conduct effective cross-examination").

In deed, "many" sex abuse cases are "close...on the evidence," Swofford v. Dobucki, 137 F.3d 442, 443 (7th Cir. 1998), and when a case hinges all-but entirely on whom to believe, an expert's interpretation of relevant physical evidence (or the lack of it) is the sort of "neutral, disinterested" testimony that may well tip the scales and sway the fact-finder.

-18-

Kimmelman, 477 U.S. at 368, 106 S.Ct. 2574 (noting that a decision based on ignorance of relevant facts and "mistaken beliefs" was not based on strategic considerations"); Smith v. Stewart, 189 F.3d 1004, 1010 (9th Cir.1999) (holding that an attorney's decision not to pursue certain evidence was not "strategic" where, inter alia, it was based on a lack of understanding of what constituted such evidence).

In People v. Warner, 52 A.D.2d 684, 382 N.Y.S. 2d 377, 378-79 (3d Dep't 1976)("[a]ny evidence which is helpful in getting at the truth of the material issue is relevant even though it is only a link in the chain of facts which must be proved to make the proposition at issue appear more or less probable"). See People v. Hudy, 73 N.Y.2d 40, 538 N.Y.S. 2d 197, 207, 535 N.E.2d 250 (1988)("extrinsic proof tending to establish a reason to fabricate is never collateral and may not be excluded on that ground") abrogated on other grounds by Carmell v. Texas, 529 U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000); People v. Beavers, 127 A.D.2d 138, 514 N.Y.S. 2d 235, 238 (1st Dep't 1987)("evidence [is not] collateral when it tends to impeach a witness's credibility with respect to the very issues the jury is asked to resolve")

As has been established, the Facebook photo of the complaining witness (petitioner's daughter) with the writing across is saying "I consider myself innocent until proven guilty" was given to trial counsel so he could have an expert child psychologist witness evaluate it, give his/her opinion on

it, primarily to impeach the credibility of my daughter the prosecution's only significant witness, to demonstrate her hostility against the defendant (her father) to falsely accuse him. The Facebook photo may also show my daughters thumbing her nose at me, the police, prosecutor and the jury, because hey, so what, I said it and you can't prove I'm lying.

Strickland v. Washington, 466 U.S. 668 (1984); prescribed the performance and prejudice prongs for assessing ineffectiveness of counsel under the Sixth Amendment. Thus, Strickland and its line of cases afford post-conviction attorneys' competency, a privilege that is denied to the pro se litigant.

Strickland's meaningful representation standards look to an attorney's ability to understand the facts, law and procedural rules, conduct investigations and legal research, brief writing and legal advocacy as they affect the outcome of the case. Attorneys and pro se prisoners are viewed through a different lens in terms of discretion, performance and quality of representation. There is no equality in a system built around trained, experienced lawyers that puts the same demands on uninitiated, under-resourced incarcerated persons.

The purpose of the Sixth Amendment guarantee of "the Assistance of Counsel," U.S. Const. Amend. VI, is to ensure that defendants have "effective" assistance of counsel, Strickland, 466 U.S. at 686, 104 S.Ct. 2052.

-20-

"[T]he question to be asked in assessing the prejudice from counsel's errors...is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." Strickland, supra, 695).

In sum, "consider[ing] the totality of the evidence before the...jury," Strickland, 466 U.S. at 695, 104 S.Ct. 2052, and bearing in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."

Had trial counsel obtained the services of an expert witness in child psychology and the opinions proved favorable to the defense that the petitioner's daughter credibility could have been seriously in doubt, then a reasonable possibility exists that the jury's verdict would have been different.

Also, had the trial court not misunderstood the importance of the Facebook photo, assigned petitioner counsel to represent him on the 440 motion and ordered a hearing to authenticate the Facebook photo (See, Admission of Electronic Evidence, supra, at pages 6-10), the 440 motion would have turned out differently. C.P.L.440.30(5).

-21-

In a last ditch effort to sully petitioner in the eyes of any reviewing court on appeal, the 440 Court states in it's Decision and Order at page 5 (last page) that "In addition, the direct evidence at trial did not consist solely of the complaintant's testimony. Other evidence includes her almost immediate 911 call reporting the rape (the audio was entered into evidence), corroborating testimony of defendant's grandmother, and defendant's statements to the police, admitting to inappropriately touching his daughter.

All of the above are a blatantly unbelievable attempt by the 440 Court to erroneously poison the case. Petitioner has never made any statements to anyone that could be interpreted as "admitting to inappropriately touching his daughter as the 440 Court claims. Petitioner's mother has never corroborated any charges that her son (petitioner) either inappropriately touched or raped his daughter.

[See the following <u>verbatims</u> ]

-22-

The following is a <u>verbatim</u> portion of the trial transcript:

    M. Correia (Rochester Police Officer)

P. 316 Mr. Doran asking:

20. Q. Well, how many times did Mr. Love tell you on the

21. morning of November 21, 2010 that he did not sexually abuse

22. his daughter?

23. A. Several times.

24. Q. When you say several, do you mean the biblical

25. several like twelve or more or do you mean more than a

P. 317

1. couple, less than a few?

2. A. I say more than a couple, less than a few.

3. Q. All right. And so let's say ten times, did he tell

4. you that he was innocent of any sexual abuse, more than two

5. times, but less than ten?

6. A. That would be safe, yes.

-23-

The following is a <u>verbatim</u> portion of the trial transcript:

WILLIE MAE LOVE (petitioner's mother)

P. 375 Mr. Doran asking:

Q. And what did you tell the police in regards to whether--
That you go to your house or anything?

A. I told them Zandi said that her daddy touched her
inappropriately.

<u>Ms.</u> <u>VanStrydonk</u>: Objection to what she said.

P. 376

Q. Now, what did you say to Officer Johnston on the morning of
the 21st of 2010?

A. I don't know how to answer that because I only kept saying
what Zandi said.

-24-

The following is a <u>verbatim</u> portion of the trial transcript:

(Jury not present; (9:45 a.m.)

(Open court; 9:45 a.m.) page 389

    THE COURT: Good morning.

    Mr. Doran, it's my understanding you intend to rest?

    Mr. Doran: Yes, your Honor.

    THE COURT: Okay.

    Do you have any additional proof to present?

    Mr. Doran: No.

Page 394

(Jury present; 9:50 a.m.)

    THE COURT: The defense rests?

    Mr. Doran: Yes, your Honor.

_____

This is the time Mr. Doran was asked if he had any additional <u>proof</u> and he said no. Mr. Doran had in his possession the Facebook photo that he could have presented.

_____

-25-

In sum, the 440 Court did not merely err, but violated Supreme Court precedent under both Martinez v. Ryan, 132 S.Ct. 1309 (2012) and Strickland v, Washington, 466 U.S. 668 (1984).

WHEREFORE, It is respectfully requested, that the habeas court order a hearing pursuant to 28 U.S.C. Sec. 2254, and appoint counsel under C.J.A. so a hearing may be held and at the conclusion grant the Writ of Habeas Corpus releasing petitioner from custody.

Respectfully submitted,

John L. Love  (pro se)

11-B-1782

Coxsackie C.F.

P.O. Box 999

Coxsackie, New York 12051

Sworn before me this
21st day of March, 2017

NOTARY PUBLIC

Jackie A. Lewis
Notary Public, State of New York
Qualified in Albany County
No. 01LE6265486
My Commission Expires 07/09/20 20

Note* Petitioner's understanding is that the respondent through their attorney will supply to the habeas court the state court record. (e.g. 440 motion, motion to re-submit, et.) with all exhibits to include Facebook photo, statement from petitioner's mother with Dr. Jocelyn Brown, Columbia Presbyterian Hosp. Child Advocacy Center; Medilex.

-26-

Exhibit (B)

12-2710

Mr. Aaron, I am drafting this off in case of John Lale's case,

This picture unlike any other was edited and posted to her profile was able to tag or print once she took the words off she took the block off the picture.

✱ My daughter is rather computer savvy so she was able to copy it although it had a block on it.
Also she took it off her page immediately

I can explain in further detail if you would like to give me a call

Thanks
Patricia Marion
"John Lale's Best Friend"
(585) 360-4434
(585) 627-3255

Exhibit (C) (1-2)



Exhibit (c) 2.

Search

Home   Profile   Account

**Prittie Minni Ayee's Photos - Minni**
Photo 4 of 9 · Back to Album · Prittie's Photos · Prittie's Profile

Friends' Photo Albums

Previous   Next



ii love uu
by Prittie Minni Ayee

**Sponsored**   Create an Ad

**Rochester Bucket List**
partners.livingsocial.com

365 Things to do in Rochester . One huge coupon emailed daily.

**See your public record**
search.mylife.com

Enter your name to see publicly available information from public records and the web with Mylife

**Boar's Head**

Become a Fan, Feed a Family! Our goal is 150,000 meals to families struggling along the Gulf Coast. Just "Like" us. We'll do the rest.
Like · 15,950 people like this.

**@home Builders**

Gorgeous single family homes in beautiful communities from Rochester to Syracuse. Starting in the $170s.
Like · 273 people like this.

**1 Trick Of A Tiny Belly:**
fatburningfurnace.com
Cutting down a bit of the belly each day is easy by simply using this 1 weird old tip. Click here to see what it is...

Added December 23 · Like · Comment

Write a comment...

From the album:
Minni by Prittie Minni Ayee

Share
Tag This Photo
Report This Photo
Download in High Resolution

Chat (7)

## Other Orders/Judgments
<u>6:17-cv-06244-FPG Love v.</u>
<u>Martuscello</u>

HABEAS,PS-B,ProSe

## U.S. DISTRICT COURT

### U.S. District Court, Western District of New York

**Notice of Electronic Filing**

The following transaction was entered on 9/26/2018 at 11:00 AM EDT and filed on 9/26/2018
**Case Name:**     Love v. Martuscello
**Case Number:**     <u>6:17-cv-06244-FPG</u>
**Filer:**
**Document Number:** <u>19</u>

**Docket Text:**
**ORDER denying Petitioner's request for habeas relief pursuant to 28 U.S.C. § 2254 and dismissing the Petition. No certificate of appealability will be issued. Appeal from this judgment would not be taken in good faith and leave to appeal as a poor person is denied. Signed by Hon. Frank P. Geraci, Jr. on 9/26/18. (JHF)**


**6:17-cv-06244-FPG Notice has been electronically mailed to:**

Michelle E. Maerov     Michelle.Maerov@oag.state.ny.us, CriminalAppealsHabeas@ag.ny.gov,
Marieke@aol.com, Michelle.Maerov@ag.ny.gov

Alyson Gill, Arlene Roces, Laura Stockmyer (e-service)     Alyson.Gill@ag.ny.gov,
Arlene.Roces@ag.ny.gov, Laura.Stockmyer@ag.ny.gov

Dennis A. Rambaud     dennis.rambaud@ag.ny.gov

**6:17-cv-06244-FPG Notice has been delivered by other means to:**

John L. Love
11-B-1782
ORLEANS CORRECTIONAL FACILITY
35-31 Gaines Basin Road
Albion, NY 14411-9199

The following document(s) are associated with this transaction:

**Document description:**Main Document

PS/CD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN L. LOVE,

                        Petitioner,                        Case # 17-CV-6244-FPG

      v.                                               DECISION AND ORDER

DANIEL F. MARTUSCELLO,

                        Respondent.

---

## INTRODUCTION

*Pro se* petitioner John L. Love seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. For the reasons that follow, his Petition is dismissed.

## BACKGROUND

On November 20, 2010, Petitioner raped his 15-year old daughter ("Z.A.").[1] After the rape, Z.A. left Petitioner's house and called 9-1-1 from a payphone about a quarter mile away. Petitioner and his mother followed Z.A. to the payphone. The police and paramedics responded, and an ambulance took Z.A. to the hospital. She underwent a sexual assault examination indicating a tear in her hymen, bleeding in her cervix, and other injuries. Police questioned Petitioner at his home and he provided an oral and written statement later that night at the police station.

After a jury trial, Petitioner was convicted of first- and third-degree rape and the trial court sentenced him to an aggregate 15-year prison term, followed by 5 years of post-release supervision. Plaintiff filed a direct appeal arguing that (1) the verdict was against the weight of the evidence; (2) the trial court erred in admitting the 9-1-1 recording; and (3) the prosecutor

---

[1] Per this Court's prior order and to protect the victim's privacy, the Court refers to her by her initials. *See* ECF No. 12.

improperly shifted the burden of proof and vouched for the victim's credibility during her opening and closing remarks. SR[2] 001-158. The Appellate Division, Fourth Department unanimously affirmed Petitioner's conviction. *People v. Love*, 134 A.D.3d 1569, 23 N.Y.S.3d 511 (4th Dep't 2015). The New York Court of Appeals denied leave to appeal. *People v. Love*, 27 N.Y.3d 697, 56 N.E.3d 908 (2016).

During the pendency of his direct appeal, Petitioner moved to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10, arguing that trial counsel was ineffective for failing to (1) object during the prosecutor's summation when she referred to the victim's weight; (2) use a photo that the victim posted of herself on Facebook; (3) consult a child psychology expert about the significance of the Facebook post; and (4) consult a medical expert on child sexual abuse.[3] SR 187-205. The § 440 Court denied the motion. SR 260-65.

Petitioner now brings this § 2254 Petition and asserts the following grounds for relief: (1) the jury's verdict was against the weight of the evidence ("Ground One"); (2) the trial court violated his due process rights by erroneously admitting into evidence the recording of the 9-1-1 call ("Ground Two"); (3) the prosecutor engaged in misconduct during her opening and closing remarks ("Ground Three"); and (4) trial counsel was ineffective for not using, in Petitioner's defense, a photo that the victim posted on Facebook ("Ground Four"). *See generally* ECF No. 1.

## STANDARD OF REVIEW

To prevail under § 2254, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Federal

---

[2] "SR" refers to the state court record and "T" refers to the trial record.

[3] Petitioner withdrew his § 440 motion and resubmitted it after the Appellate Division rendered a decision on his direct appeal. *See* SR 206, 207-216.

2

law, as determined by the United States Supreme Court, or resulted in a decision that was based

on an unreasonable factual determination in light of the evidence presented in state court. *See* 28

U.S.C. § 2254(d)(1), (2). Before a federal court can review a habeas petition, the petitioner must

exhaust all available state court remedies. 28 U.S.C. §2254(b)(1)(A); *see Picard v. Connor*, 404

U.S. 270 (1971). To satisfy the exhaustion requirement, a habeas petitioner "must fairly present

his federal claims to highest state court from which a decision can be had, informing the court of

the factual and legal bases for the claim asserted." *Diaz v. Mantello*, 115 F. Supp. 2d 411, 416

(S.D.N.Y. 2000) (citing *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990)).

## DISCUSSION

1. Ground One

    Petitioner argues that the jury's verdict was against the weight of the evidence. As

Respondent correctly points out, however, the Court is not authorized to review the weight of the

evidence supporting a jury verdict on habeas review. Indeed, "assessments of the weight of the

evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas]

appeal." *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996). Accordingly, this claim is dismissed.

2. Ground Two

    Petitioner argues that the trial court violated his due process rights by erroneously admitting

a recording of the 9-1-1 call into evidence. Specifically, Petitioner asserts that the call was not an

excited utterance or present sense impression, and its admission into evidence violated the rules

governing the prompt complaint exception to hearsay. ECF No. 1 at 30-38. Respondent contends

that the due process claim is 1) unexhausted because Petitioner did not present it in federal

constitutional terms on direct appeal; 2) now procedurally defaulted because Petitioner can no

longer raise it in any state forum; and 3) otherwise meritless. ECF No. 13-1 at 13.

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Id.* (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)).   A habeas petitioner must therefore "'fairly present' his claim in each appropriate court (including a state supreme court with powers of discretionary review), thereby alerting the court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  On appeal, Petitioner presented this claim solely as a violation of state evidentiary law, not as a violation of his Fourteenth Amendment due process rights.  *See* SR 13-21.   After a review of the record, the Court finds that Petitioner's appellate brief was insufficient to put the state court on notice that he was intending to assert a federal constitutional claim and, therefore, his due process claim is unexhausted and procedurally barred.

However, a habeas petitioner may overcome this bar by demonstrating (1) cause for the default and actual prejudice, or (2) that failure to consider the federal habeas claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 733 (1991).  Petitioner does not address these issues in his Petition or traverse.  Notwithstanding this failure,[4] the Court finds that Petitioner's due process claim is also subject to dismissal because it is meritless.

A state court's evidentiary rulings, even if erroneous under state law, do not present the kind of federal constitutional claims for which habeas relief may be granted.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (noting that "federal habeas corpus relief does not lie for errors of state law").  A writ of habeas corpus based upon a state evidentiary error may be issued only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right and that

---

[4] "Application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); *accord, e.g., Rhines v. Weber*, 544 U.S. 269, 277 (2005). Neither the Supreme Court nor the Second Circuit has adopted a standard for district courts to exercise discretionary review.

the error was "so extremely unfair that its admission violates fundamental conceptions of justice." *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). A petitioner seeking to prove that a constitutional violation occurred through the state trial court's erroneous admission of evidence must establish that "the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985). The erroneously admitted evidence "must have been 'crucial, critical, highly significant.'" *Id.* (quoting *Nettles v. Wainwright*, 677 F.2d 410, 414-15 (5th Cir. 1982)).

In making the due process determination, the Court engages in a two-part analysis, examining whether (1) the trial court's evidentiary ruling was erroneous under New York law, and (2) the error denied the constitutional right to a fundamentally fair trial. *Wade v. Mantello*, 333 F.3d 51, 59 n.7 (2d Cir. 2003). Here, the Appellate Division found that the trial court properly admitted the recording under the excited utterance exception to the hearsay rule, *Love*, 134 A.D.3d at 1570 (citing *People v. Cotto*, 92 N.Y.2d 68, 79 (1998)), and that the 9-1-1 recording was "the product of declarant's exposure to a startling or upsetting event that is sufficiently powerful to render the observer's normal reflective processes inoperative," *id.* (quoting *People v. Vasquez*, 88 N.Y.2d 561, 574 (1996)).

In New York, hearsay statements are admissible as "excited utterances" when they are "made under the stress of excitement caused by an external event, and not the product of studied reflection and possible fabrication." *People v. Johnson*, 1 N.Y.3d 302, 306 (2003). Petitioner does not dispute that, immediately after the incident, the victim went from Petitioner's home directly to a payphone about five blocks, or a quarter mile, away. *See* ECF No. 1 at 35; T 239, 277. Petitioner

5

and his mother followed the victim to the payphone. T 241. However, Petitioner urges the Court to consider that the victim made the 9-1-1 call "30 to 60 minutes after the alleged rape," and "this long walk provided [her] with the opportunity to reflect on what she would say when she made the telephone call," despite the fact that she sounded "emotional and extremely upset" during the call. ECF No. 1 at 35.

The New York Court of Appeals has explicitly rejected a rule regarding a definite or fixed time limitation with respect to excited utterances. *See People v. Brown*, 70 N.Y.2d 513, 520-521 (1987). Rather, "excited utterances made after the event may be admitted if not made under the impetus of studied reflection." *Id.* at 521 (internal quotation marks omitted); *see also People v. Brooks*, 71 N.Y.2d 877 (1988) (holding that the victim's declarations made more than two hours after a shooting were nevertheless uttered while he remained under the influence of a startling event and not after a period of reflection or deliberation). Given all of the above, the Court finds that the trial court did not err in admitting the 9-1-1 call into evidence as an excited utterance. Even if the call was erroneously admitted, Petitioner has not established that he was deprived of a fair trial. There was substantial other evidence, including the victim's trial testimony and sexual assault forensic evidence, pointing to his guilt. *See, e.g.*, T 224-273, 332-365. Accordingly, Petitioner's due process claim is dismissed.

3. Ground Three

Petitioner contends that the prosecutor engaged in misconduct during her opening and closing remarks. Specifically, Petitioner argues that the prosecutor improperly shifted the burden of proof and vouched for the complaining witness's credibility by asking the jury to "look for any motive to lie." ECF No. 1 at 39-41. Respondent asserts that this claim is procedurally barred and unexhausted because it was raised and rejected on direct appeal, *Love*, 134 A.D.3d at 1570, and

Petitioner did not seek leave to review the ruling in the New York Court of Appeals. *see* SR 181-184. Petitioner does not identify a cause for this failure in his Petition and did not respond to this argument in his traverse.

The Appellate Division rejected this claim because Petitioner did not object to the prosecutor's remarks during trial and thus failed to preserve the claim for appellate review. *Love,* 134 A.D.3d at 1570 (citing C.P.L. 470.05 [2]; *People v. Cullen,* 110 A.D.3d 1474, 1475, 972 N.Y.S.2d 792 (2013), *aff'd,* 24 N.Y.3d 1014, 21 N.E.3d 1009 (2014)). The appellate court also determined that the summation "constituted fair response to defense counsel's summation, and did not exceed 'the broad bounds of rhetorical comment permissible in closing argument.'" *Id.* (quoting *People v. Galloway,* 54 N.Y.2d 396, 299, 430 N.E.2d 885 (1981)). It is well-settled that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir. 1990). A state court's reliance on a defendant's failure to object contemporaneously to a prosecutor's allegedly improper summation constitutes an adequate and independent state ground for deciding the claim. *Id.* (holding that the state court's reliance on contemporaneous objection rule was as an independent and adequate state ground that barred habeas review of prosecutorial misconduct claims). Accordingly, Petitioner's claim is procedurally barred.

Because of the independent and adequate state procedural bar, the Court cannot review the sufficiency of the evidence claim unless Petitioner shows cause and prejudice, or that a fundamental miscarriage of justice would occur should the Court decline to consider the claim's merits. *Coleman,* 501 U.S. at 722. Petitioner's pleadings have not sufficiently shown cause, prejudice, or facts to support this exception, and the claim is therefore dismissed.

7

4. Ground Four

Petitioner argues that trial counsel was ineffective for not using, in Petitioner's defense, a photo that Z.A. posted on Facebook. Respondent states that Petitioner "has never raised this argument before." ECF No. 13-1 at 20. Petitioner did, however, include an ineffective assistance of counsel claim in his motion to vacate his conviction. *See* SR 187-216. Respondent argues that the federal claim now asserted is different from the claim raised in Petitioner's § 440 motion and is therefore unexhausted. In his traverse, Petitioner vigorously argues that he satisfied the exhaustion requirement because the ineffective assistance of counsel claim was properly presented to the § 440 Court and is the same as the federal claim now before this Court. ECF No. 14.

Even assuming this claim is exhausted,[5] the Court finds that it is meritless. In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court adopted a two-part standard for evaluating ineffective assistance of counsel claims. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 687-88. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This additional "prejudice" requirement was based on the conclusion that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

On habeas review of a *Strickland* claim, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether

---

[5] Pursuant to 28 U.S.C. § 2254(b)(2), a federal habeas court may reject a claim on the merits without reaching question of exhaustion.

that determination was unreasonable – a substantially higher threshold." *Knowles v. Mirzayance,*
556 U.S. 111, 123 (2009) (internal quotation marks and citation omitted). Here, the § 440 Court
concluded that defense counsel "can hardly be deemed ineffective." SR 264. Upon review, the
Court finds that the § 440 Court's conclusion survives the applicable standard of review and
Petitioner's habeas claims for ineffective assistance of counsel must be denied.

The crux of Petitioner's argument is that "[d]efense counsel did nothing with this photo
evidence of [Z.A.]'s state of mind nor did he seek out the opinion of an expert witness in child
psychology on this obviously important piece of material information coming directly from the
complaining witness in a case he was defending." ECF No. 1 at 44. The photo, which was posted
to Facebook, showed Z.A. with the words "I consider myself innocent until proven guilty" across
the front. *Id.* Petitioner states that the photo and words suggest that the victim is "thumbing her
nose at [Petitioner], the police, prosecutor and the jury." *Id.* at 61. In Petitioner's opinion, counsel
should have used the photo to impeach the victim's credibility, demonstrate her hostility toward
Petitioner, and establish that she falsely accused him. *Id.*

These allegations, however, fail to establish that counsel's performance was
constitutionally deficient. The fact that counsel's strategy was ultimately unsuccessful does not
render his or her performance objectively unreasonable. *See Ramos v. Artuz,* 40 F. Supp. 2d 206,
208 (S.D.N.Y. 1999) ("[Petitioner] quarrels with his counsel's decisions not to, for example,
request an accomplice corroboration instruction, request a circumstantial evidence charge and or
to call various witnesses. While different strategic decisions could have been made, the ones that
were made fell within the range of constitutional effectiveness. Even though counsel's strategy
was ultimately unsuccessful, that fact does not render his assistance constitutionally ineffective.").
Moreover, the record shows that Petitioner's attorney provided professional and competent

9

assistance of counsel, including objecting to testimony and the introduction of evidence, moving

for a mistrial, presenting a defense and testimony at trial, and urging jurors to disregard certain

evidence. For these reasons, Petitioner's ineffective assistance of counsel claim is dismissed.

## **CONCLUSION**

Petitioner's request for habeas relief pursuant to 28 U.S.C. § 2254 is denied and the Petition

is dismissed. The Clerk of Court is directed to close this case.

Because Petitioner failed to make a substantial showing of a denial of a constitutional right,

no certificate of appealability will issue. *See* 28 U.S.C. § 2253(c)(2). The Court also certifies

pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this judgment would not be taken in good

faith and that leave to appeal as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438

(1962). Petitioner must file any notice of appeal with the Clerk's Office, United States District

Court, Western District of New York, within 30 days of the date of judgment in this action.

Petitioner must file requests to proceed on appeal as a poor person with the United States Court of

Appeals for the Second Circuit in accordance with the requirements of Federal Rule of Appellate

Procedure 24.

IT IS SO ORDERED.

Dated: September 26, 2018
       Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

10

**Other Orders/Judgments**
6:17-cv-06244-FPG Love v.
Martuscello

HABEAS,PS-B,ProSe

## U.S. DISTRICT COURT

### U.S. District Court, Western District of New York

**Notice of Electronic Filing**

The following transaction was entered on 9/26/2018 at 11:05 AM EDT and filed on 9/26/2018
**Case Name:**    Love v. Martuscello
**Case Number:**    6:17-cv-06244-FPG
**Filer:**
**WARNING: CASE CLOSED on 09/26/2018**
**Document Number:**  20

**Docket Text:**
**JUDGMENT in favor of Daniel F. Martuscello against John L. Love. Signed by Clerk on
9/26/18. (JHF)**

**6:17-cv-06244-FPG Notice has been electronically mailed to:**

Michelle E. Maerov    Michelle.Maerov@oag.state.ny.us, CriminalAppealsHabeas@ag.ny.gov,
Marieke@aol.com, Michelle.Maerov@ag.ny.gov

Alyson Gill, Arlene Roces, Laura Stockmyer (e-service)    Alyson.Gill@ag.ny.gov,
Arlene.Roces@ag.ny.gov, Laura.Stockmyer@ag.ny.gov

Dennis A. Rambaud    dennis.rambaud@ag.ny.gov

**6:17-cv-06244-FPG Notice has been delivered by other means to:**

John L. Love
11-B-1782
ORLEANS CORRECTIONAL FACILITY
35-31 Gaines Basin Road
Albion, NY 14411-9199

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**                            Form 1

Love                                                ,

                        Plaintiff,

            v.                                    **NOTICE OF APPEAL**

Martuscello                              ,            6:17   -CV- 06244-FPG

                        Defendant(s).

Notice is hereby given that _____ John L. Love _____ [*print your name*],

Plaintiff _____ [*identify yourself as plaintiff or defendant in the district court action*]

in the above-named case, hereby appeals to the United States Court of Appeals for the Second

Circuit from ___X___ all _____ part [*check one*] of the decision of this Court entered on

September 26 ___, 20 18 .

    [*Complete the next section only if you are not appealing the whole order.*] I am appealing

from the part of the order which _____

_____

Dated: October 8 ___, 20 18        *John L. Love 11-B-1782*
                                    *Signature*

                                    John L. Love 11-B-1782
                                    *Print Your Name*
                                    **Appearing Pro Se**

                    Address:   ORLEANS CORR. FAC.
                               35-31 Gaines Basin Road
                               Albion, NY 14411-9199

                    Telephone: _____

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT OF NEW YORK

Love
_____

               Plaintiff(s)

               v.

**APPLICATION TO PROCEED
WITHOUT FULL PREPAYMENT
OF FEES; AFFIDAVIT AND
AUTHORIZATION FORM**

Martuscello     Defendant(s)     CASE NUMBER:     6:17-cv-06244-FPG

I, John L. Love _____ declare that I am (check appropriate box)

☒     petitioner/plaintiff/movant     ☐     other

in the above-entitled proceeding; that in support of my request to proceed without prepayment of fees or costs under 28 U.S.C. § 1915 I declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief sought in the complaint/petition/motion.

In support of this application, I answer the following questions under penalty of perjury:

1.     Are you currently incarcerated?:     ☒   Yes     ☐     No (If "No" go to Part 2)

        If "Yes" state the place of your incarceration: ORLEANS CORR. FAC. _____

        Are you employed at the institution?     ☒   Yes     ☐   No

        Do you receive any payment from same?     ☒   Yes     ☐   No

**Notice to Inmates:**     <u>The Certificate Portion Of This Affidavit Must Be Completed.</u>

2.     Are you currently employed?:     ☒   Yes     ☐   No

      a.     If the answer is "Yes" state the amount of your take-home salary or wages and pay period and give the name and address of your employer.

                                  $12.50/WK Facility Porter

      b.     If the answer is "No" state the date of your last employment, the amount of your take-home salary or wages and the name and address of your last employer.

*5/2005*

3. In the past twelve months have you received any money from any of the following sources?

   a. Business, profession or other self employment    ☐ Yes   ☒ No

   b. Rent payments, interest or dividends    ☐ Yes   ☒ No

   c. Pensions, annuities or life insurance payments    ☐ Yes   ☒ No

   d. Disability or workers compensation payments    ☐ Yes   ☒ No

   e. Gifts or inheritances    ☐ Yes   ☒ No

   f. Any other sources    ☒ Yes   ☐ No

   If the answer to any of the above is "Yes" describe each source of money and state the amount received **and** what you expect you will continue to receive.   Father/Mother, $50 off and on.

4. Do you have any cash, checking or savings accounts?    ☐ Yes   ☒ No
   If "Yes" state the total amount _____

5. Do you own any real estate, stocks, bonds, securities, other financial instruments, automobiles or **any other assets?**    ☐ Yes   ☒ No
   If "Yes" describe the property and state its value (Attach additional sheets as necessary):

6. List the person(s) who are dependent on you for support, state your relationship to each person and indicate how much you contribute to their support.

   None

I declare under penalty of perjury that the above information is true and correct.

October 8, 2018      *John L. Love*
DATE                   SIGNATURE OF APPLICANT

## CERTIFICATE
(To be completed by appropriate official at institution of incarceration)

I certify that the applicant named herein has the sum of $ _____ on account to his/her credit at (Name of Institution) _____
I further certify that the applicant has the following securities to his/her credit: _____
I further certify that **during the past six(6) months** the applicant's average balance was $ _____

_____          _____
DATE                        SIGNATURE OF AUTHORIZED OFFICER

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Love
_____

v.

Martuscello
_____

**CERTIFICATE OF SERVICE***

Docket Number: #18-3037
_____

I, John L. Love _____, hereby certify under penalty of perjury that
         (print name)

on November 5, 2018 _____, I served a copy of application for "COA" _____
     (date)

copy-application for habeas corpus , copy of district court decision and order
                   (list all documents)

by (select all applicable)**

___ Personal Delivery       X United States Mail       ___ Federal Express or other
                                                       Overnight Courier

___ Commercial Carrier       ___ E-Mail (on consent)

on the following parties: Barbara D. Underwood,-
New York State Office of the Attorney General    28 Liberty Street New York, NY 10005

| Name | Address | City | State | Zip Code |
|------|---------|------|-------|----------|
| Clerk's Office United States Court of Appeals Foley Square New York, NY 10007 | | | | |
| Name | Address | City | State | Zip Code |
| | | | | |
| Name | Address | City | State | Zip Code |
| | | | | |
| Name | Address | City | State | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

November 5, 2018
_____
Today's Date

John L. Love
_____
Signature

Certificate of Service Form (Last Revised 12/2015)



7017 2620 0000 6792 4579

John L. Love 11-B-1782
Orleans Corr. Fac.
35-31 Gaines Basin Rd.
Albion, NY 14411-9199

USM40NY
SDNY

Clerk's Office —
United States Court
of
Appeals

40 Foley Street Square
New York, NY 10007

PRIORITY MAIL

UNITED STATES
POSTAL SERVICE ®

For Domestic and International Use

Label 107R, May 2014

TRACKED
★ ★ ★
INSURED